**REVERSE, RENDER, and DISMISS; and Opinion Filed May 14, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-12-00532-CV**

_____

**TIMOTHY DARRELL JONES, Appellant**

**V.**

**FERNANDO GARZA AND DORA GARZA, Appellees**

_____

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-10360**

_____

## OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion by Justice O'Neill

In this interlocutory appeal from the trial court's denial of his special appearance, appellant Timothy Darrell Jones, a Tennessee resident, argues he has insufficient contacts with Texas to be subjected to the jurisdiction of a Texas court. We agree, and reverse and render judgment dismissing appellees' claims for want of jurisdiction.

## Background

On August 6, 2009, appellee was driving an eighteen-wheel tractor/trailer on I-81 South in Wythe County, Virginia. While sitting in traffic, appellant, who was also driving an eighteen-wheeler, hit appellee's rig. At the time of the collision, appellant's rig said "Elbar, Inc." on the door. Elbar, Inc. is a Texas-based corporation. The rig also had the Department of Transportation (DOT) number and the operating authority number prominently displayed on the side, as required by law. Based on this information, appellees believed appellant's rig was

"owned and/or leased and/or operated by Defendant Elbar, Inc. (or a related company)" or Trisal Leasing. Trisal Leasing is an Arkansas-based company with a principle place of business in Dallas, Texas.

Appellee alleged that while his rig did not receive any substantial damage from the accident, the jolt of the impact seriously injured him. He further argued that as an employee, borrowed employee, or statutory employee of Elbar, Inc. and/or Trisal Leasing, appellant was driving the rig with full consent and permission of the companies and therefore, he was also responsible for any injuries caused by his negligence.

After appellees' filed a negligence suit, appellant filed his special appearance challenging the Texas court's jurisdiction over him. Appellant argued he is not a resident of Texas and does not maintain a registered agent in Texas. He does not maintain a place of business in Texas nor does he have a substantial connection with the state. Further, he argued appellees' claims do not arise from and are not related to any activity conducted in Texas.

Rather, appellant has lived in Memphis, Tennessee for the past ten years. Although he has driven trucks through several states, he does not have a regular route to or through Texas. He admitted to driving through Texas on three occasions; however, none of these trips related to the present lawsuit. His only other contacts with Texas occurred while he was serving in the National Guard and was required to take two trips to Fort Hood.

Appellees' argued that because appellant drove a truck with Elbar, Inc.'s name, logo, DOT number and federal motor carrier (MC) operating number on it, he was a statutory employee of the Texas company and subject to jurisdiction in a Texas court. They repeatedly claimed that on the date of the wreck, appellant was "availing himself of the protections and benefits of the laws of the State of Texas." The trial court agreed and denied appellant's special appearance.

**Standard of Review and Applicable Law**

We review de novo the trial court's ruling on a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Where, as here, the trial court did not make findings of fact or conclusions of law, we infer all facts necessary to support the judgment if they are supported by the evidence. *Id.*

A Texas court may exercise personal jurisdiction over a nonresident defendant under the Texas long-arm statute, which extends personal jurisdiction as far as federal due process requirements permit. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Rapaglia v. Lugo*, 372 S.W.3d 286, 289 (Tex. App.—Dallas 2012, no pet.). The plaintiff bears the initial burden of pleading facts sufficient to bring the defendant within the reach of the Texas long-arm statute. *See BMC Software, Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Once the plaintiff meets his initial burden, the burden then shifts to the defendant to negate all bases for personal jurisdiction asserted by the plaintiff. *Id.* If the defendant does so, the burden shifts back to the plaintiff to show the court has personal jurisdiction over the defendant as a matter of law. *Id.*

Due process allows a forum state to exert jurisdiction when the nonresident defendant (1) has some minimum, purposeful contact with the state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Rapaglia*, 372 S.W.3d at 289. Purposeful availment is the touchstone of the minimum contact analysis. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The purposeful availment analysis involves a three-part inquiry: (1) only the nonresident defendant's contacts with the forum state are relevant; (2) the contact relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must have sought some benefit, advantage or profit by availing

himself of the forum state's jurisdiction. *Moki Mac*, 221 S.W.3d at 575; *Rapaglia*, 372 S.W.3d at 289.

A nonresident defendant's contacts with a forum state may give rise either to general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795–96. For general jurisdiction, a plaintiff must allege the nonresident defendant had continuous or systemic contacts with the forum state. *Guardian Royal*, 815 S.W.2d at 228. For specific jurisdiction to apply, the nonresident defendant's contact with the forum state must be purposeful, and the cause of action must arise from or relate to the contact. *Moki Mac*, 221 S.W.3d at 576.

### Discussion

We begin by briefly discussing the arguments raised by appellees' in support of jurisdiction over appellant. Appellees spend their entire brief discussing the relationship between several related trucking companies, which includes Elbar, Inc., explaining how they all have the same insurance carrier and attorneys, and how federal regulations for the trucking industry have been specifically enacted to prevent victims of trucking accidents from getting the run around in situations where trucking companies try to pass blame to someone else. *See, e.g., Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 38 (Tex. App.—Fort Worth 2002, no pet.) (noting the purpose of the Federal Motor Carrier Safety Regulations "was to ensure that interstate motor carriers would be fully responsible for the maintenance and operation of the leased equipment and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred, and providing financially responsible defendants"). They also rely on the Federal and Texas Motor Carrier Safety Regulations for licensing that allowed the truck driven by appellant, which belonged to a Texas company, the right to be legally on the road. *See* 37 TEX. ADMIN. CODE ANN. § 4.11(a).

The problem with these arguments is that appellees focus on the actions of third parties, specifically those contacts of the trucking companies with Texas. The Texas Supreme Court has repeatedly rejected such arguments because "problems arise if jurisdiction turns not on a defendant's contacts, but where it 'directed a tort.'" *See Michiana*, 168 S.W.3d at 790. Such an analysis shifts the court's focus from the "relationship among the defendant, the forum, and the litigation" to the relationship among the "plaintiff, the forum . . . and the litigation." *Id.* (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). By contrast, the minimum contacts analysis focuses solely on the actions and reasonable expectations of the defendant. *Id.*; *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 661 (Tex. 2010) (noting a "jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business") (emphasis in original).

While appellees argue appellant should have reasonably expected to litigate a lawsuit in Texas when he drove a truck owned by a Texas corporation and the truck was licensed in Texas, we cannot agree. The record is clear appellant does not live in Texas, does not own any land in Texas, has not conducted any business in Texas, and has no family in the state. While appellant drove his truck through Texas on three occasions, none of these trips are related to the present litigation, and his regular trucking route does not include Texas. His only other contacts with Texas occurred while he was serving in the National Guard, and he was required to take two trips to Fort Hood as part of his duties. Such contacts with Texas are random and fortuitous, not purposeful.

Moreover, to accept appellees' argument would essentially negate the minimum contacts analysis. For example, an American Airlines pilot, who is stationed in New York and has no ties to Texas but flies a plane with the AA logo between New York and Tennessee, would automatically be subject to jurisdiction in Texas if he crashed a plane in Virginia simply because

American Airline's corporate headquarters is in Texas. According to appellees' argument, this would be reasonable because the pilot should know American Airlines is headquartered in Texas and by flying a plane with the AA logo, the pilot has agreed to subject himself to jurisdiction of this state.

As stated, this is not the jurisdictional standard. "[O]nly the defendant's contact with the forum are relevant, not the unilateral activity of another party or a third person." *Moki Mac Expeditions*, 221 S.W.3d at 575 (citing *Michiana*, 168 S.W.3d at 785). Thus, based on the lack of minimum contacts with Texas, appellant cannot reasonably be expected to defend himself in a Texas court based on a trucking accident, which had nothing to do with Texas, that happened in Virginia. Accordingly, Texas does not have specific jurisdiction over appellant.

In reaching this conclusion, we are not persuaded by appellees' argument that appellant's affidavit in support of his special appearance is defective because it states he was stationed in Mississippi but the notary was from North Dakota, which allegedly indicates appellant lied about his location when signing the affidavit. Appellees' have incorrectly read appellant's affidavit.

Appellant's affidavit states, "I am currently on active duty with the Army National Guard, and am stationed at Camp Shelby (Water Valley, Mississippi), awaiting deployment to Afghanistan." Appellant did not say he was in Mississippi at the time he signed the affidavit but only that he was stationed in Mississippi. Further, the affidavit heading indicates it was made in "State of North Dakota, County of Ramsey," and the first paragraph states appellant personally appeared before the notary. Thus, these statements conclusively prove appellant was in Ramsey County, North Dakota when he signed the affidavit. *See* N.D. CENT. CODE § 44-06.1-05 (2011) ("If a notarial act relates to a statement made in or a signature executed on a record, the individual making the statement or executing the signature shall appear personally before the notarial officer."); *Id*. § 44.06.1-14(1)(c) (stating a notarial act must be evidenced by a certificate

and must "identify the jurisdiction in which the notarial act is performed"). Accordingly, nothing in the record indicates appellant was anywhere other than North Dakota when he signed the affidavit. Thus, we are not persuaded by appellees' argument.

Finally, while not emphasized by appellees, we likewise conclude Texas does not have general jurisdiction over appellant. Nothing in the record shows appellant had continuous or systemic contacts with the forum state.

Having concluded appellant's contacts with Texas are insufficient to support specific or general jurisdiction, we sustain his sole issue on appeal. Therefore, the trial court erred in denying his special appearance.

### Conclusion

The trial court's order denying appellant's special appearance is reversed, and we render judgment dismissing appellees' claims against appellant for want of jurisdiction.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

120532F.P05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TIMOTHY DARRELL JONES, Appellant

No. 05-12-00532-CV          V.

FERNANDO GARZA AND DORA
GARZA, Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-10360.
Opinion delivered by Justice O'Neill;
Justices FitzGerald and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and we **RENDER** judgment **DISMISSING** appellees FERNANDO GARZA'S AND DORA GARZA'S claims for want of jurisdiction.

It is **ORDERED** that appellant TIMOTHY DARRELL JONES recover his costs of this appeal from appellees FERNANDO GARZA AND DORA GARZA.

Judgment entered this 14th day of May, 2013.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE