COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

WESTERN TECHNOLOGIES, INC., An
Arizona Corporation,

§

No. 08-17-00232-CV

§

Appeal from the

Appellant,

§

448th District Court

v.

§

of El Paso County, Texas

OMNIVATIONS II, L.L.C., A Texas
Limited Liability Company,

§

§

(TC# 2017DCV2600)

Appellee.

## **O P I N I O N**

Western Technologies, Inc. (WTI) appeals the trial court's denial of its special appearance requesting dismissal for lack of personal jurisdiction. We will affirm.

### **BACKGROUND**

WTI is an Arizona corporation headquartered in Phoenix that provides clients with engineering and consulting services. WTI states that its service area encompasses only the states of Arizona, Nevada, Utah, Colorado, and New Mexico, and the company asserts that it has no business activity, operations, presence, personnel, or registered agents located in Texas.

In January 2015, WTI and Omnivations II, L.L.C., (OMNI) entered into a contract under which OMNI would provide WTI with GPS tracking services for WTI's vehicle fleet (the Service Contract). The Service Contract stated that the parties' agreement would be governed by Arizona

law and that disputes arising under the contract must be brought "in a court of competent jurisdiction in Maricopa County, Arizona." The Service Contract also stated that the contract's terms "may not be varied, modified, or changed except by written agreement of both parties executed by a corporate officer of each party." The Service Contract was signed in Phoenix, and lasted for a period of one year, but would continue on a month-to-month basis unless there was a written termination notice. At the time the Service Contract was signed, OMNI was an Arizona-based company. However, OMNI later moved its operations to El Paso, Texas. OMNI invoices showed that OMNI charged WTI for tracking WTI vehicles in Phoenix; Tucson, Arizona; Las Vegas, Nevada; Salt Lake City, Utah; Albuquerque, New Mexico; and Farmington, New Mexico. OMNI's invoicing operations occurred from El Paso.

In March 2016, WTI representative John Lyon, OMNI manager John Warren, and others participated in a telephone conference call. During the call, Lyons asked if OMNI could provide custom software development services for WTI. What happened thereafter is a matter of dispute. According to OMNI, Lyon and Warren verbally agreed that OMNI would provide software development at a seventy-five percent discounted rate ($2,500 as opposed to $10,000) in exchange for WTI entering into a two-year subscription for continued GPS tracking services.

Following these discussions, in June 2016, OMNI circulated a document entitled Subscription and Services Agreement (the Draft Subscriber Agreement). The Draft Subscriber Agreement's terms and conditions contained a choice-of-law and forum selection clause providing that the Agreement would be governed by and construed in accordance with Texas law, that the parties agreed to submit to the jurisdiction of the State of Texas, and that any and all disputes arising from or in connection to the agreement would be brought in the state or federal courts of El Paso County, Texas. Section 1.2 of the agreement dealing with methods of acceptance

provided, in relevant part:

> Placement of a purchase order by the Customer, whether in writing, on the internet, or by e-mail shall mean acceptance of these Terms that are deemed incorporated in any purchase order and shall form the contract between the parties. Digital signature by Customer shall be proof of agreement.

There is no signed version of the Draft Subscriber Agreement appearing in the record.

An invoice in the record indicates that on July 6, 2016, WTI paid $2,500 for development services. On July 28, 2016, Lyons requested an addendum to the agreement. On August 1, Warren sent Lyons an email confirming that OMNI would provide an addendum with the following terms: (1) a description of the development work; (2) the cost of the development ($2,500); and (3) the pricing per unit at the rate of $19.95.

In May 2017, WTI stopped paying for OMNI's services. On June 2, 2017, WTI requested that OMNI terminate its services.

### *Procedural History*

OMNI sued WTI for contract-related claims in an El Paso district court. WTI filed a special appearance challenging the El Paso district court's jurisdiction.

The trial court held a hearing at which Warren testified for OMNI. WTI did not present any witnesses of its own, but it briefly cross-examined Warren on whether a digitally signed version of the Draft Subscriber Agreement existed. Warren testified that he did not know, but that he did not have a signed copy available.

WTI argued that absent a digitally signed copy of the Draft Subscriber Agreement, OMNI could not prove the existence of an enforceable contact containing a forum selection clause. The trial court denied WTI's special appearance, finding among other things that WTI had accepted the terms of the proposed contract containing the forum selection clause by placing a purchase order for the software development, that the requested addendum did not change the terms of the

3

agreement but merely supplemented it, and that OMNI and WTI performed pursuant to the terms of the agreement.

This interlocutory appeal followed. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(7).

## DISCUSSION

In four issues, WTI contends that the trial court erred by not granting a special appearance.[1] OMNI counters that the trial court correctly concluded that WTI accepted the terms of an agreement containing a Texas-designated forum selection clause, which waives any objection to personal jurisdiction.

### *Standard of Review*

"[A] court must have both subject matter jurisdiction over the controversy and personal jurisdiction over the parties" before it may exercise its power over a legal dispute. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). "Subject matter jurisdiction involves a court's 'power to hear a particular type of suit,' while personal jurisdiction 'concerns the court's power to bind a particular person or party.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016). This case deals with the trial court's ability to exercise personal jurisdiction. A state court may exercise personal

---

[1] WTI characterizes its four issues as follows:

> Issue 1: The first issue is whether the facts and evidence supporting WTI's Special Appearance were sufficient to negate jurisdiction and shift the burden back to Omni to bring forth evidence establishing jurisdiction.

> Issue 2: The second issue is whether the forum selection clause in the signed and executed Service Contract, which designates Arizona as the forum for any disputes, is determinative of the special appearance, as it reflects an unequivocal intention not to be haled into Texas courts or have contacts in Texas.

> Issue 3: The third issue is, following the shift of the burden back to Omni, whether Omni established sufficient minimum contacts to support the Trial Court's exercise of jurisdiction over WTI, a non-resident defendant with no presence, no operations, no personnel, no business in Texas, and no purposeful availment to Texas.

> Issue 4: The fourth issue is whether a series of short emails discussing a possible future contract constitutes an enforceable contract. WTI contends it does not.

4

jurisdiction over a non-resident defendant so long as that state's long-arm statute permits it, and so long as the jurisdictional exercise is consistent with the due process limitations imposed on state courts by the federal constitution. *Id.* Because the Texas long-arm statute allows state courts to exercise personal jurisdiction over nonresident tortfeasors to the fullest extent permitted by the federal constitution, our jurisdictional analysis rises and falls entirely in tandem with federal due process case law, which we will summarize later in this opinion. *Id.*; *see also* TEX.CIV.PRAC.&REM.CODE ANN. § 17.042 (Texas long-arm statute).

A party may challenge personal jurisdiction by filing a special appearance. *See* TEX.R.CIV.P. 120a. We review the trial court's decision on a special appearance under a mixed standard, deferring to the trial court's resolution of contested facts so long as the court's findings are supported by legally and factually sufficient evidence, and reviewing the trial court's application of those facts to the law *de novo*. *Epicous Adventure Travel, L.L.C. v. Tateossian, Inc.,* No. 08-18-00057-CV, 2019 WL 926278, at *3 (Tex.App.—El Paso Feb. 26, 2019, no pet. h.).

The plaintiff and the defendant "bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* Once the plaintiff satisfies this initial burden, the defendant challenging jurisdiction "bears the burden to negate all bases of personal jurisdiction" and must tie its jurisdictional arguments "to the allegations in the plaintiff's pleading." *Id.* The defendant can challenge personal jurisdiction "on either a factual or legal basis." *Id.* at 658-59. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* at 659. "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish

jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

*Analysis*

The exercise of personal jurisdiction is constitutionally permissible "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." [Internal citation and quotation marks omitted]. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007). There are two types of personal jurisdiction: general and specific. We recently summarized the difference between general and specific jurisdiction this way:

1. If a corporate defendant is **incorporated or headquartered in Texas**, Texas state courts have **general jurisdiction** over the defendant. The courts may hale the defendant to answer **any claim** brought by any plaintiff—even where the claims involve actions occurring outside the forum of Texas, and even where the plaintiff is not a Texas resident.

2. If a corporate defendant is *not* incorporated or headquartered in Texas, Texas state courts may only exercise **specific jurisdiction** over the out-of-state defendant **if the defendant's actions are sufficiently related to Texas** so as to subject the defendant to specific jurisdiction in Texas. In determining whether an exercise of specific jurisdiction is permissible, Texas courts use the **stream-of commerce-plus test**. That test requires:

   - A defendant's minimum contacts with Texas, as evinced by the defendant's purposeful availment of Texas;

   - The lack of any fair play/substantial justice considerations that would stand as an obstacle to jurisdiction; and

   - A nexus (i.e. a 'substantial connection') between the defendant, the forum, and the claim at hand. [Emphasis in orig.].

*Michelin N. Am., Inc. v. De Santiago*, -- S.W.3d --, No. 08-17-00119-CV, 2018 WL 3654919, at *10 (Tex.App.—El Paso Aug. 2, 2018, pet. dism'd).

6

We agree with WTI that OMNI cannot establish general jurisdiction. As we recently stated, U.S. Supreme Court case law has made clear that "absent extraordinary circumstances, general jurisdiction is limited to those locales in which a corporate defendant is either incorporated or headquartered." *Id*. at *8. WTI is headquartered and incorporated in Arizona, not Texas, so general purpose claim-blind jurisdiction is inapplicable here.

As for specific jurisdiction, WTI spends much of its brief emphasizing its lack of Texas contacts and pointing to cases holding that telephonic negotiations and other types of lead-up activity to contract formation do not necessarily constitute minimum contacts sufficient for the exercise of personal jurisdiction. *See*, *e.g.*, *Bryan v. Gordon*, 384 S.W.3d 908, 916-17 (Tex.App.—Houston [14th Dist.] 2012, no pet.)(phone calls and emails to Texas resident standing alone were insufficient to establish specific jurisdiction); *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484 (Tex.App.—Dallas 2010, pet. denied)(same). However, "[t]o the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas." *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex.App.—Dallas 2010, no pet.). Agreeing to a forum selection clause naming Texas the forum for litigation waives any objection to lack of personal jurisdiction and makes the party subject to personal jurisdiction in a Texas court. *Id.* Thus, before examining whether WTI's contacts and negotiation activity would subject WTI to specific jurisdiction in Texas, we must first determine whether the trial court erred by deciding that WTI agreed to a contract containing a Texas forum selection clause.

We find no error with the trial court's decision.

WTI's chief argument is that it cannot be held to the Draft Subscriber Agreement's terms because acceptance of the contract was conditioned on a presence of a valid digital signature, and

7

there is no evidence WTI digitally signed the agreement. We disagree. Whether the parties met minds—i.e. whether there was an offer that was accepted based on an objective assessment of what the parties said and did and not on their subjective state of mind—is a generally a question of fact. *See Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex.App.—El Paso 2015, no pet.). The presence or absence of a signature is some evidence of intent related to contract formation, and parties can condition acceptance of the contract on the presence of a valid signature, digital, or otherwise. *Wright v. Hernandez*, 469 S.W.3d 744, 756-57 (Tex.App.—El Paso 2015, pet. denied). But the absence of a signature does not mean a contract has not formed. *Id*. at 757. Contracts can be accepted in other ways as well. *See Lujan v. Alorica*, 445 S.W.3d 443, 448 (Tex.App.—El Paso 2014, no pet.)(stating that an offeror may specify particular manner in which offer may be accepted). And even unsigned documents may become binding written contracts "if the parties have unconditionally assented to terms stated in an unsigned document[.]" *In re Bunzl, USA, Inc.*, 155 S.W.3d 202, 209 (Tex.App.—El Paso 2004, orig. proceeding). We must read the terms of the purported contract itself to decide whether an offer was conditioned on certain criteria or not.

Here, WTI's interpretation of the Draft Subscriber Agreement as being conditioned on the presence of a digital signature focuses too narrowly on the presence of one clause to the exclusion of others. The plain terms of Section 1.2 provide that a digital signature is one means of accepting the agreement, but making a purchase order also constitutes acceptance of the agreement. Again, Section 1.2 states: "Placement of a purchase order by the Customer, whether in writing, on the internet, or by e-mail shall mean acceptance of these Terms that are deemed incorporated in any purchase order and shall form the contract between the parties. Digital signature by Customer shall be proof of agreement." We read these two sentences disjunctively, not conjunctively. The

8

Draft Subscriber Agreement provides for two methods of acceptance: payment for services or digital signature on the document itself.

It is undisputed that after receiving the draft contract, WTI eventually issued a purchase order and paid $2,500 to OMNI. While WTI cites to a chain of emails in which various people discuss terms of an agreement to show there was confusion and thus no meeting of the minds between WTI and OMNI, the significance of the emails is unclear. WTI is correct that the exchange of emails does not necessarily indicate assent to a contract. *See, e.g.*, *2001 Trinity Fund, L.L.C. v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 453-54 (Tex.App.—Houston [14th Dist.] 2012, pet. filed); *WTG Gas Processing, L.P. v. ConocoPhillips, Co.*, 309 S.W.3d 635, 650-51 (Tex.App.—Houston [14th Dist.] 2010, pet. denied). However, in both the trial court and again on appeal, WTI did not and does not point to any specific email or other evidence suggesting that the company rejected the terms of the draft contract or made a counteroffer. Given WTI's receipt of the Draft Subscriber Agreement, given that the Agreement provides that purchase constitutes acceptance, given that WTI paid OMNI the amount specified in the Draft Subscriber Agreement, and given that the parties continued to do business for a significant period of time thereafter, we find there is more than a scintilla of evidence supporting the trial court's conclusion that WTI accepted the terms of the Draft Subscriber Agreement, including the forum selection clause contained therein.[2] Any objection to personal jurisdiction has been waived.

## CONCLUSION

There is no reversible error. Issues One through Four are overruled. The judgment of the trial court is affirmed.

---

[2] As a fallback position, WTI argues that the forum selection clause from the first-in-time Service Contract should govern and this case should be dismissed so the issue can be litigated in Arizona. However, the trial court found that when WTI accepted the terms of the Draft Subscriber Agreement, "the Subscriber Agreement became the contract of the parties." We agree. The Draft Subscriber Agreement was the operative contract for determining this issue.

9

April 5, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.