In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00049-CV
_____

HENIFF TRANSPORATION SYSTEMS, LLC, Appellant

V.

ZOLA MACK, INDIVIDUALLY AND AS NEXT FRIEND OF D.T.M., A MINOR, AND AS REPRESENTANTIVE OF THE ESTATE OF JOHN MACK, DECEASED, Appellee

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-200,955**

**MEMORANDUM OPINION**

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over nonresident defendants in lawsuits if the defendant commits a tort in whole or in part in Texas.[1] Following a hearing on Heniff Transportation Systems, LLC's

---

[1] Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (West 2015); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

1

(Heniff's) special appearance, the trial court found it possessed jurisdiction over Heniff under the Texas long-arm statute. The underlying suit arose following a wreck in Louisiana, which occurred in October 2017. After the collision, the wife and children of the man who was the passenger in a truck involved in the wreck sued Heniff in Jefferson County, Texas.

Heniff appeals from the trial court's ruling.[2] In four issues, Heniff advances the following arguments:

- The evidence the trial court considered when it denied the special appearance fails to establish any substantial connection between Heniff's conduct in Texas and the wreck;

- The evidence the trial court considered fails to prove Heniff's principal place of business is in Texas;

- The trial court erred by failing to comply with Heniff's request for written findings; and

- The trial court erred by overruling Heniff's objections to the affidavit of Heniff's former assistant manager.

We conclude the pleadings and evidence authorized the trial court to find the court could exercise jurisdiction over the plaintiffs' claims.

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2018) (authorizing appellate courts to hear appeals from interlocutory orders granting or denying special appearances).

Background

Heniff is a limited liability company formed in Illinois. The company operates as an interstate motor carrier specializing in hauling liquids in bulk. Headquartered in Illinois, Heniff has facilities and employees in Texas.

John Mack was the lessor-operator of the tractor involved in the wreck. Mack was fatally injured in the wreck. In July 2017, Mack leased his tractor to Heniff. Under the lease, Mack had the right to hire drivers to assist him in discharging his duties to Heniff. On the trip that ended in the wreck, Mack agreed to Heniff's request to allow Alex Willett, a Heniff employee, to accompany him so Willett could learn how to discharge the type of chemicals Heniff's customers wanted Heniff to deliver to the customer's plant in Florida. After Mack and Willett connected the tanker to Mack's tractor at a chemical plant in Jefferson County, Texas, they left with the tanker for Florida. On the way, Willett rear ended a car traveling on the interstate in front of them. Mack and Willett were both killed in the wreck.

Zola Mack is Mack's surviving spouse. Less than a month after Mack's death, Zola, individually, on behalf of Mack's estate, and as the next friend of her son, a minor, sued Heniff seeking to recover on their claims that arose from Mack's death.[3]

---

[3] *See id*. § 71.002(b) (West 2008) ("A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness,

3

We will refer to Zola in the remainder of the opinion to mean Zola, individually, and in her capacities as the representative of Mack's estate and her minor son's next friend.

Heniff responded to Zola's suit with a special appearance, which is a dilatory plea defendants use to challenge whether a trial court has jurisdiction over the defendant to decide the merits of a plaintiff's case.[4] In its special appearance, Heniff claimed that the negligence that caused the wreck "would necessarily have occurred in Louisiana."[5] To support its special appearance, Heniff attached an affidavit from

---

unskillfulness, or default."); *Id*. § 71.004 (West 2008) (providing that the surviving spouse, children, and parents of the deceased may bring a wrongful death action).

[4] Special appearances "almost always requires consideration of evidence, and the rules of procedure set out the process for adducing such evidence." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). Rule 120a of the Texas Rules of Civil Procedure sets out the procedure defendants must follow when filing a special appearance. Tex. R. Civ. P. 120a.

[5] Heniff failed to file a verified pleading to support its special appearance. Instead, the company attached an affidavit from Leon Lupina, its safety director, to its special appearance. Lupina's affidavit contains assertions of fact relevant to some of the facts the trial court needed to decide if it had jurisdiction over Heniff. But as to certain other jurisdictional facts, Lupina's affidavit does not function as the equivalent of a sworn denial. *See id*. 120a(1) (requiring defendants to make their special appearances by filing a sworn motion); *Washington DC Party Shuttle, LLC v. IGuide Tours, LLC*, 406 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (explaining that an affidavit attached to a special appearance may function as the equivalent of a sworn denial). Because Lupina's affidavit challenged some of the facts in Zola's pleadings relevant to the trial court's power to exercise jurisdiction over Heniff in the case, we consider the affidavit in resolving Heniff's

its safety director, Leon Lupina. Lupina's affidavit includes the following statements:

- Heniff is an Illinois-based entity whose corporate headquarters are in Illinois;

- Heniff did not own the tractor involved in the collision, but instead, the company leased the tractor involved in the wreck from Mack;

- On the night of October 29, 2017, Mack left a chemical plant in Jefferson County, Texas, to take a load of chemicals to Florida;

- the driver's logs for Mack's truck show the last time Mack's truck was at Heniff's yard was on October 28, 2017;

- Heniff conducts trucking operations from its yard in Jefferson County, Texas; and

- Heniff's operations "in Texas [are not] substantial enough, continuous enough, or systematic enough to justify suit in Texas . . . on causes of action arising from the truck accident that occurred in Louisiana."

About four months after Heniff filed its special appearance, Mack's other children, Fredericka Mack and John Christopher Mack, intervened as plaintiffs in the suit. Before the hearing on Heniff's special appearance, Zola amended her pleadings several times. Zola's fourth amended petition, her live pleading when the hearing occurred, alleges that Heniff committed a tort (in whole or in part) in Texas.

---

appeal despite the fact that Heniff failed to strictly comply with Rule 120a(1) by filing a sworn motion.

Generally, Zola's petition alleges facts which, on their face, assert Heniff committed two torts (in whole or part) in Texas. First, she alleged that Heniff, acting through its employee, Willett, negligently violated Federal Motor Safety Regulations by leaving for Florida when he was suffering from fatigue.[6] Second, she alleged that Heniff negligently violated Federal Motor Safety Regulations by allowing Willett to leave for Florida when it new or should have known he was fatigued.[7] Zola's pleadings also include a conclusory statement, unsupported by any specific facts, asserting the trial court could exercise general jurisdiction over her claims.

In due course, Zola responded to Heniff's special appearance. In her response, Zola asked the trial court to consider an affidavit she obtained from an individual named Pamela Hayes. In her affidavit, Hayes states that in 2017, she worked as Heniff's assistant manager at its trucking terminal in Jefferson County, Texas. Hayes asserts that as Heniff's assistant manager, she could take drivers carrying loads for Heniff off the road. And Hayes swore she dispatched Mack and Willett "on the run involving the crash." She explained that, before the two men left on the trip that involved the wreck, Mack and Willett had returned from Florida with a tanker they

---

[6] *See* 49 C.F.R. § 392.3 (LEXIS through Sept. 16, 2019).

[7] *Id*.

had taken there from Texas because Heniff's customer rejected the load when it arrived. According to Hayes, upon learning that Heniff's customer rejected the tanker, she told Mack to return to Texas, pick up another tanker, and take it to Florida. Hayes' affidavit states Mack followed her instructions.

Several months before the hearing on Heniff's special appearance, Heniff filed additional exhibits for the trial court to consider in resolving Heniff's challenge to the court's jurisdiction over Heniff in the case. The additional exhibits include a copy of the lease governing Heniff's use of Mack's tractor. Among the terms of the lease is an Illinois forum-selection clause.[8] Heniff, both here and in the trial court, relies on a term in the lease stating it hired Mack as an independent contractor to argue the evidence before the trial court fails to show it committed any torts relevant to Zola's suit in Texas.

But other terms in the lease that Heniff does not point out are relevant to the trial court's task of deciding whether it could exercise jurisdiction over Heniff to resolve the merits of Zola's claims. First, the lease required Heniff and Mack to

---

[8] The forum-selection clause provides that the parties' rights under the lease and will be litigated in Cook County, Illinois. But both here and in the trial court, Heniff has not argued Zola's wrongful death and survival claims arose directly or indirectly under the lease. Instead, Heniff asserts it "has not yet sought the dismissal of the case based on [the] forum selection clause[.]" Given the procedural posture of the case, we express no opinion on whether the forum-selection clause in the lease applies to Zola's claims.

comply with federal laws and regulations applicable to motor carriers and truckdrivers. Second, although the lease gave Mack the right to hire drivers, Heniff had the right "to disqualify [drivers Mack hired] from providing" services. Third, while Mack was an independent contractor, the lease gave Heniff the "right to exclusive possession, control and use of [Mack's tractor] for the duration of [the] Agreement." Fourth, the lease gave Heniff the "right to disqualify any vehicle [Mack] used" to perform his obligations. Thus, while the lease describes Mack as an independent contractor, Heniff's rights under the lease allowed it to disqualify Willett from driving Mack's truck. It also allowed Heniff to prevent Mack from using his tractor that day.

Less than a week before the hearing on Heniff's special appearance, Heniff asked the court to consider more exhibits.[9] The company also filed objections to the

---

[9] The documents the trial court considered when it ruled on Heniff's special appearance include (1) Lupina's February 2018 affidavit, (2) Lupina's July 2018 affidavit, (3) a copy of a deposition Lupina gave during discovery in October 2018, (4) Hayes' November 2018 affidavit, and (5) Mack's lease to Heniff. Lupina's July 2018 affidavit states (1) Heniff trained Willett in Illinois or from locations other than in Texas, (2) Mack was responsible for monitoring Willett's hours and ensuring that Willett complied with the regulations applicable to truck drivers, (3) Heniff monitors and enforces federal regulations that apply to drivers through its offices in Illinois, (4) Willett had the right to opt out of the trip if he was concerned about whether he was fatigued, and (5) the logs for the drivers show Mack and Willett were operating the truck within the minimum rest times allowed by the DOT. Heniff also attached a copy of a deposition the parties obtained from Lupina before the hearing.

8

affidavit Hayes signed. When the court heard Heniff's special appearance, it overruled Heniff's objections to Hayes' affidavit. After the hearing, the trial court signed an order denying Heniff's special appearance "in all respects." Subsequently, Heniff filed a timely request asking the trial court to provide the parties with written findings supporting its ruling.[10] The trial court, however, never responded to the company's request.

Heniff's Objections to Hayes' Affidavit

*Standard of Review - Evidentiary Rulings*

For convenience, we address Heniff's fourth issue first. In issue four, Heniff argues the trial court erred by overruling its objections to Pamela Hayes' affidavit. We review rulings admitting evidence over a party's objection under an abuse-of-discretion standard.[11] An abuse of discretion occurs if the trial court acted in an

---

[10] A month after Heniff filed its request for findings, Heniff filed a notice of past due findings. *See* Tex. R. Civ. P. 296 (requiring a party to file its request for findings and conclusions within twenty days of the trial court's ruling); Tex. R. Civ. P. 297 (requiring a party to file notice of past due findings and conclusions when the trial court fails to comply with a party's initial request for findings).

[11] *See Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 12 (Tex. App.—Dallas 2008, no pet.) (citing *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001)).

9

arbitrary or unreasonable manner without reference to the guiding rules or principles that apply to its ruling.[12]

*Analysis*

In its brief, Heniff argues the trial court erred by overruling its objections to Hayes' affidavit because it includes statements that constitute hearsay and contains conclusory, speculative, and vague statements that Hayes asserted without foundation. And Heniff argues the affidavit includes opinions that it claims Hayes was not qualified to express.

Hayes' affidavit includes the following statements: (1) Hayes dispatched Mack and Willett "on the run involving the crash[;]" (2) Mack and Willett performed the work as instructed; (3) as the assistant manager, Hayes "had the authority to discipline or discharge any driver, if necessary" and take drivers off the road; and (4) Hayes performed her work for Heniff in Jefferson County, Texas. Those statements are neither conclusory, speculative, vague, nor are they opinions offered without foundation.

Heniff also objected to the statement in Hayes' affidavit that references what she learned about Heniff's investigation into the wreck from Heniff's terminal manager, Justin Talmadge. According to Hayes, Talmadge told her the investigation

---

[12] *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

10

revealed that Willett "fell asleep." While Heniff argues the statement is inadmissible hearsay and conclusory, we disagree. As Heniff's assistant manager, and the person who dispatched Mack, Hayes held a position with Heniff where she could have learned about the results of Heniff's investigation of the wreck. The source of Hayes' statement, Heniff's terminal manager, is someone the trial court could have found to be a person who would have been informed about the results of Heniff's investigation of the wreck.

Under the Texas Rules of Evidence, statements made by those employed by the opposing party when still employed are not hearsay when offered against the party for whom the employee worked.[13] Zola offered Talmadge's statement against Heniff, and Talmadge worked for Heniff when he made the statement. Under Rule 801(e)(2)(D), Talmadge's statement was not hearsay because Talmadge's statement is considered a statement of an opposing party that is not included as hearsay under the applicable rule.[14] Because Hayes merely purports to repeat what Talmadge told her, Talmadge's statement as repeated by Hayes is not conclusory.

Because Heniff's fourth issue lacks merit, it is overruled.

---

[13] Tex. R. Evid. 801(e)(2)(D).

[14] *Id.*

11

Special Appearances—Written Findings

In issue three, Heniff argues the trial court erred by failing to comply with its request for findings of fact and conclusions of law, which it timely filed. Rule 296 of the Texas Rules of Civil Procedure requires trial courts to provide parties with written findings when the findings are requested in a timely-filed request.[15] But Rule 296 gives a party only a right to findings following "a conventional trial on the merits before the court."[16] Rulings on special appearances are not rulings from conventional trials.[17] Instead, rulings on a defendant's special appearance results in the court issuing an interlocutory order, an order that can be withdrawn before trial.[18]

In its brief, Heniff overlooks the fact that Rule 28.1(c) of the Rules of Appellate Procedure provides trial courts need not file findings on appeals arising

---

[15] *See* Tex. R. Civ. P. 296 (request for findings); *Id.* 297 (requiring a party to file its request for findings).

[16] *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997); *see* Tex. R. Civ. P. 296.

[17] *IKB Indus.*, 938 S.W.2d at 442.

[18] Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (authorizing a party to appeal from an *interlocutory order* entered on a party's special appearance) (emphasis added).

from interlocutory orders.[19] We conclude the trial court was not required to comply with Heniff's request.[20]

## Jurisdiction

### *Standard of Review*

In its first issue, Heniff argues Zola failed to show that it could be sued in Texas based on claims arising over the wreck. The nature of a nonresident defendant's contacts with the forum may support two basic types of jurisdiction, specific or general.[21] "Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum."[22] "A court has general jurisdiction over a nonresident defendant whose affiliations with the state are so continuous and systematic as to render it essentially at home in the

---

[19] *See* Tex. R. App. P. 28.1(c) (in appeals from interlocutory orders, the "trial court need not file findings of fact and conclusions of law but may do so within 30 days after the order is signed").

[20] *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also* Tex. R. Civ. P. 297; Tex. R. App. P. 28.1.

[21] *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007).

[22] *Id*. (cleaned up).

forum State."[23] Since issues involving questions of jurisdiction are treated by courts as questions of law, they are reviewed under a *de novo* standard.[24]

Under Texas law, a defendant's special appearance functions as a motion challenging the trial court's jurisdiction to resolve the merits of a dispute. Rule 120a of the Texas Rules of Civil Procedure provides the procedure the defendant must follow when filing a special appearance.[25] Under that rule, special appearances are to be decided based on "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony."[26] When ruling on special appearances, trial courts may consider evidence and resolve issues of fact relating to the task the court is facing requiring it to decide the jurisdictional dispute.[27] When a trial court rules without providing the parties with any written findings to explain its ruling, the reviewing court will infer all relevant findings needed to support the ruling the trial

---

[23] *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018) (cleaned up).

[24] *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

[25] Tex. R. Civ. P. 120a.

[26] *Id.* 120a(3).

[27] *See BMC Software*, 83 S.W.3d at 794.

14

court made if the findings that must be implied are supported by the evidence the trial court considered when it ruled.[28]

Texas courts may exercise jurisdiction over nonresident defendants if the pleadings and evidence demonstrate the following:

- the Texas long-arm statute applies and authorizes a Texas court to decide the case;[29] and

- the court's exercise of jurisdiction over the nonresident defendant comports with the constitutional guarantee giving defendants due process rights.[30]

In her brief, Zola argues the evidence before the trial court shows the trial court properly denied Heniff's special appearance because specific jurisdiction exists over Heniff on her claims. A defendant must have minimal contacts with the forum to satisfy concerns about due process.[31] "The inquiry into the minimum contacts necessary to create specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation."[32] "For a State to exercise jurisdiction

---

[28] *See Bell*, 549 S.W.3d at 558 (cleaned up).

[29] *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016) (citing *Moki Mac*, 221 S.W.3d at 574).

[30] *Id.*

[31] *See Bell*, 549 S.W.3d at 559.

[32] *Walden v. Fiore*, 517 U.S. 277, 283-84 (2014) (cleaned up).

consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[33]

Specific jurisdiction exists if the plaintiff's claims arise from or relate to the defendant's purposeful contacts with the forum in which the suit was filed.[34] "A claim arises from or relates to a defendant's forum contacts if there is a substantial connection between those contacts and the operative facts of the litigation."[35] This standard "does not require proof that the plaintiff would have no claim but for the contacts, or that the contacts were a proximate cause of the liability."[36] "Instead, we look at what the claim is principally concerned with, whether the contacts will be the focus of the trial and consume most if not all of the litigation's attention, and whether the contacts are related to the operative facts of the claim."[37]

The parties bear shifting burdens of proof in the hearing in which the trial court must decide whether it has jurisdiction to decide the merits of a plaintiff's

---

[33] *Id*. at 284.

[34] *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 73 (Tex. 2016); *see also Moki Mac*, 221 S.W.3d at 576.

[35] *TV Azteca v. Ruiz*, 490 S.W.3d 29, 52 (Tex. 2016) (cleaned up).

[36] *Id.* at 52-53 (cleaned up).

[37] *Id.* at 53 (cleaned up).

claims.[38] Under the burden-shifting standard, the plaintiff must plead sufficient facts to bring the nonresident defendant within the reach of the Texas long-arm statute.[39] If the plaintiff's pleadings do not show the plaintiff's claims fall under the long-arm statute, "the defendant need only prove that it does not live in Texas to negate jurisdiction."[40] But if the plaintiff meets its burden of pleading sufficient facts to show the defendant committed a tort in Texas, the burden shifts to the defendant "to negate all bases of personal jurisdiction alleged by the plaintiff."[41]

Since the petition defines the scope of the lawsuit, "the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."[42] The defendant can meet its burden in one of two ways. It can show the facts do not support the plaintiff's claim that it committed a tort in Texas.[43] Or the

---

[38] *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

[39] *Id.*

[40] *Id.* at 658-59.

[41] *Id.* at 658.

[42] *Id.*

[43] *Id.* at 659.

defendant can show it is not subject to jurisdiction in the court where the plaintiff sued on legal grounds.[44]

One way the defendant may show it is not subject to suit in the forum is by showing that it has had no contacts with the forum.[45] By demonstrating no contacts exist, the defendant disproves the facts alleged by the plaintiff claiming the nonresident committed a tort in the forum.[46] On the other hand, the defendant may raise a legal defense to the court's exercise of jurisdiction over it by showing that even if the plaintiff's allegations about the nonresident defendant's conduct in the forum are true, those facts are insufficient to allow courts in Texas to exercise jurisdiction over the nonresident with respect to the claims involved in the suit.[47]

*Specific Jurisdiction—Analysis*

Zola's pleadings allege Heniff committed two torts in Texas. According to Zola, Heniff committed a tort in Texas by authorizing Willett to leave with the load even though Heniff knew or should have known he was fatigued. Second, she claims that Heniff, as Willett's employer, was responsible for Willett's decision to leave

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

with the load when he was fatigued. We conclude that Zola's pleadings allege facts that required Heniff to file a sworn denial or its equivalent responding to these two Texas-based tort claims.[48] Heniff did not file a sworn denial or its functional equivalent regarding the factual basis of these two Texas-based tort claims.[49]

While the allegations in Zola's pleadings alleging Heniff committed Texas-based torts satisfy the requirements of the Texas long-arm statute, they do not necessarily satisfy due process concerns arising whenever a court requires a nonresident defendant to defend itself in a state where it does not reside.[50] Heniff responded to Zola's petition by filing affidavits and evidence showing the wreck occurred in Louisiana. While Heniff argues the negligence causing the wreck occurred in Louisiana, a court's jurisdictional inquiry focuses on where the negligence—not the plaintiffs' injuries—occurred. Heniff's pleadings and evidence fail to refute Zola's claims that Heniff committed torts in Texas.

---

[48] *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2); Tex. R. Civ. P. 120a(1).

[49] One of Lupina's affidavits states that in the company's investigation, Heniff examined the driver's logs maintained on Mack's truck. According to Lupina, Heniff's review of the logs shows Willett and Mack were within the allowable hours for driving and for resting under DOT rules. But even if that statement is true, Heniff's evidence does not disprove Zola's theory claiming Willett began the trip while fatigued. Willett, for example, could have logged his hours truthfully but still been fatigued when the trip began.

[50] *See Moncrief*, 414 S.W.3d at 149.

Heniff also raises legal arguments claiming that it was not responsible for Willett's and Mack's conduct as a matter of law. It argues that Willett worked for Mack and was Mack's borrowed employee when the wreck occurred. And it claims Mack operated his truck as an independent contractor, so it was not responsible for the decision he made about when to leave Texas with the load.

But Heniff ignores the responsibilities imposed on it as a motor carrier operating in interstate commerce. In Title 49, § 14102(a) of the United State Code, Congress gave the Department of Transportation rulemaking authority to promulgate rules governing "motor vehicles not owned by [the carrier and] transport[ing] property under an arrangement with another party[.]"[51] The section requires motor carriers operating in interstate commerce to control "and be responsible for operating those motor vehicles [the motor carrier uses but does not own] in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier."[52] Under that authority, the Secretary of the Department of Transportation approved Rule 392.3. It provides as follows:

---

[51] 49 U.S.C.S. § 14102(a) (LEXIS through Pub. L. No. 116-56).

[52] *Id.*

No driver shall operate a commercial vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle.[53]

Heniff's legal excuses argue Willett was not its employee when the wreck occurred and that Mack, not Heniff, controlled when Mack's tractor left Texas with the load. But Mack's lease with Heniff refutes Heniff's argument that it had no right to control Mack's truck or to control Willett. Under the lease, Mack gave Heniff the right "to disqualify drivers [used by Mack] from providing transportation services [to Heniff under the lease]." And the lease gave Heniff "exclusive possession, control and use of [Mack's tractor] for the duration of [the lease]."[54] As to Willett's use of Mack's tractor, the lease gave Heniff "the right to disqualify any vehicle used by [Mack] in performing services" under the lease. And the lease provides the parties to the lease "shall comply with and be governed by all . . . rules and regulations of

---

[53] 49 C.F.R. § 392.3.

[54] The parties to leases between motor carriers operating equipment in interstate commerce and operators like Mack must contain a provision like the one in the Heniff/Mack lease. *See* 49 C.F.R. § 376.12(c)(1) (LEXIS through Sept. 16, 2019) (requiring all leases between authorized motor carriers and owner-operators include provisions that the carrier assumes "exclusive possession, control, and use of the equipment," and that the carrier assumes "complete responsibility for the operation of the equipment for the duration of the lease").

the DOT . . . to the extent they govern contract carriage." Hayes stated the same thing in her affidavit, explaining she had the right to take drivers off the road. At the very least, the evidence before the trial court is sufficient to show a substantial connection exists between Heniff's activities in Texas and the operative facts surrounding Zola's claims.[55]

The evidence the trial court considered also satisfies any due process concerns that relate to making Heniff defend Zola's claims in Texas. The acts and omissions involving Heniff's Texas-based conduct revolve around the alleged acts and omissions of Heniff's Texas-based employees. The question of whether Willett was fatigued will likely be a central issue in the case given Talmadge's statement that Heniff's investigation showed Willett fell asleep. Given our conclusion a substantial connection exists between Heniff's Texas-based contact and the operative facts of the litigation, we hold Texas courts can exercise specific jurisdiction over Zola's wrongful death and survival claims.[56]

We overrule Heniff's first issue.

*General Jurisdiction—Analysis*

---

[55] *See Moki Mac*, 221 S.W.3d at 576.

[56] *See Walden*, 517 U.S. at 284.

In its second issue, Heniff argues the trial court erred by finding the court could exercise general jurisdiction over Heniff since it is an Illinois-based company with its principal place of business there. Here, the evidence Zola provided the trial court does not come close to proving that Heniff has sufficient activities in Texas to make Heniff at home here.[57] Instead, all the evidence in the record shows Illinois is Heniff's home state.

We conclude the trial court erred by overruling the motion on all grounds because the evidence fails to show Texas courts possess general jurisdiction over Heniff, a nonresident of this state. Nevertheless, the trial court's error was not harmful since Texas courts have specific jurisdiction over Heniff to resolve Zola's claims.[58] We will, however, correct the trial court's order to make it clear the order is not affirmed on a general jurisdiction ground.[59]

Conclusion

---

[57] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011) (cleaned up).

[58] Tex. R. App. P. 44.1(a) (providing that judgments issued by trial courts may not be reversed on appeal unless the court of appeals concludes the error resulted in the trial court's rendering "an improper judgment").

[59] Tex. R. App. P. 43.2(b) (allowing appellate courts to modify a trial court's judgment and affirm it as modified).

Because the pleadings and evidence demonstrate Texas courts have specific jurisdiction over Heniff to resolve Zola's claims, we affirm the trial court's ruling on specific jurisdiction grounds. The trial court, however, erred by finding it possessed general jurisdiction over Heniff, a nonresident of the state. To correct the error, we delete the last sentence of the trial court's order and reform that sentence so it reads as follows: "IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that Heniff Transportation Systems, LLC's Special Appearance is denied solely because the pleadings and evidence demonstrate the court has specific jurisdiction over Heniff in the case."

AFFIRMED AS MODIFIED.

_____
HOLLIS HORTON
Justice

Submitted on June 6, 2019
Opinion Delivered October 24, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.