Dan KELLY and Laura Hofstatter,
Petitioners,

v.

**GENERAL INTERIOR CONSTRUCTION, INC., Respondent.**

No. 08–0669.

Supreme Court of Texas.

Argued Nov. 18, 2009.

Delivered Jan. 15, 2010.

David C. Holmes and Leymon L. Solomon, The Solomon Law Firm, Houston, TX, for Petitioners.

Ross A. Sears II, Sears Crawford, L.L.P., Houston, TX, for Respondent.

Justice GUZMAN delivered the opinion of the Court.

■ To establish personal jurisdiction in Texas courts over nonresident defendants, plaintiffs must plead a connection between the defendants' alleged wrongdoing and the forum state. Asserting statutory and common law claims, General Interior Construction, Inc. (GIC), a Texas corporation, sued Daniel Kelly and Laura Hofstatter (collectively, the Officers), both Arizona residents. Absent from GIC's pleadings, however, is any allegation that Kelly and Hofstatter committed any acts giving rise to these claims in Texas. Because the Officers filed a special appearance proving that they do not live in Texas, they successfully negated all alleged bases for personal jurisdiction in Texas courts. We accordingly reverse in part the court of appeals and render judgment dismissing GIC's claims against the Officers for lack of personal jurisdiction.

## I. Background

Kelly and Hofstatter are the sole shareholders and officers of Diva Consulting, Inc., an Arizona-based general contractor that Meristar Hospitality Corporation, a non-Texas entity, hired to renovate a Houston hotel. Diva then entered into subcontracting agreements with various companies, including Texas-based GIC, to perform the work. During construction Kelly made several trips to Houston to oversee the project. Diva also sent change orders and payments to and received invoices from these Texas companies, while receiving funds from Meristar to pay for the work.

Disputes arose between Diva and GIC, with the former claiming that GIC did substandard work requiring substantial ex-

penditures to remedy, and the latter claiming that Diva did not pay the entire contract amount. Meristar ultimately filed a lawsuit against Diva and various subcontractors, including GIC. GIC filed cross-claims against Diva and third-party claims against the Officers, asserting claims for breach of contract, violations of Chapter 162 of the Texas Property Code (Texas Trust Fund Act),[1] and fraud.

Regarding the trust-fund claims, GIC alleged that the Officers "were the trustee[s] of all payments made to [Diva] by [Meristar]"; that GIC was "a beneficiary of the trust money paid to the trustees"; and that the Officers "provided affidavits to [Meristar] stating that all subcontractors (including [GIC]) were paid or would be paid" when in fact those statements were "untrue." In its fraud claim, GIC referred to its trust-fund allegations and alleged that "the material representations made by [Diva] were false and were made with the intention that GIC would rely thereon." The only mention of Texas in GIC's pleading is the incorporation by reference of Diva's contract with GIC, which identifies the Houston hotel as the job site. GIC did not allege that the Officers lived in Texas, that they conducted business in Texas, or that any of the operative facts of the trust-fund and fraud claims occurred in Texas.

The Officers filed a special appearance, stating they were residents of Arizona, did not own property in Texas, did not employ anyone in Texas, and did not conduct business in Texas in their personal capacities. The trial court denied the special appearance, and a divided court of appeals affirmed in part, reversing only as to the breach-of-contract claim.[2]

The majority reasoned that the Texas Trust Fund Act reaches past the corporation to hold its officers personally liable for violations of the Act: "[W]e must focus only on whether [GIC] has pleaded that the Officers, regardless on behalf of [Diva] or in their individual capacities, controlled and directed funds received for the [hotel] project." 262 S.W.3d 79, 86. Finding that GIC had so pleaded, the court upheld the trial court's order. The court used similar reasoning regarding the fraud claim, concluding that "[t]he Officers' alleged fraud sufficiently 'relates to' conduct purposefully directed toward Texas." *Id.* at 86–87. In response to the dissent's claim that the Officers had no connection with Texas, the majority pointed to the following facts: "The record reveals that performance under the construction contract was to be performed exclusively in Texas. The Officers sent and directed payments to [GIC] in Texas. Kelly made site visits to the Texas work site. The Officers received

---

1. Texas law provides that payments made to a contractor or its officers, agents, or directors are trust funds if made under a contract for the improvement of real property in this state. *See* Tex. Prop.Code § 162.001(a). The contractor or its officers, agents, or directors who receive or control the funds are trustees thereof. *Id.* § 162.002. The beneficiaries of the trust funds are persons who provide labor or materials for the project. *See id.* § 162.003. A trustee who acts, *inter alia*, with intent to defraud by using, disbursing, or otherwise diverting "trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries" misapplies the trust funds. *Id.* § 162.031.

"Intent to defraud" means, as relevant here, that the trustee so used trust funds obtained by means of an affidavit under Texas Property Code § 53.085 containing false information relating to the trustee's payment of the obligations. *Id.* § 162.005(1)(C); *see also id.* § 53.085 (requiring the affiant, upon request of the payor, to aver that subcontractors, laborers, and materialmen have been paid in full).

2. GIC has not sought review of the court of appeals' judgment regarding the breach-of-contract issue.

numerous invoices from Texas regarding the [hotel] project." *Id.* at 86 n. 5.

The dissent found no connection between the Officers and Texas for either claim:

> In its third-party petition, [GIC] alleges that the Officers acted with intent to defraud by providing false affidavits to Meristar and that the Officers violated section 162.005(1)(C) of the Texas Property Code. [GIC] also asserts that the Officers fraudulently represented that [GIC] would be paid in full under its contract with Diva. Notably, [GIC] does not allege that any of these acts occurred in Texas. Moreover, in its third-party petition, [GIC] does not allege that the Officers committed any act whatsoever in Texas or that they conducted any business whatsoever in Texas. Therefore, [GIC's] third-party petition lacks sufficient allegations to invoke the trial court's personal jurisdiction over the Officers, and the Officers, thus, could satisfy their burden of negating all bases of personal jurisdiction merely by presenting evidence that they are not residents of Texas.

*Id.* at 93 (Frost, J., dissenting). Because the Officers established that they do not live in Texas, the dissent would have reversed the trial court's denial of the Officers' special appearance.

The Officers petitioned this Court for review, which we granted. 52 Tex. Sup.Ct. J. 792 (June 5, 2009). We have jurisdiction because there is a dissent in the court of appeals. *See* Tex. Gov't Code § 22.225(c); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex. 2002).

## II. Standard of Review

■ Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's determination of a special appearance. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007); *BMC Software,* 83 S.W.3d at 794. "When [as here] a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software,* 83 S.W.3d at 795 (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987); *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984)).

## III. Discussion

### A. In Personam Jurisdiction

■ A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The broad "doing business" language in Texas's long-arm statute allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac,* 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991)). Personal jurisdiction is consistent with due process "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex.2009) (internal quotation marks omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

GIC argues that the trial court had only specific jurisdiction over its claims against the Officers. "Specific jurisdiction ... arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. In a specific jurisdiction analysis, we focus ... on the relationship among the defendant, the forum[,] and the litigation." *Id.* (alteration in original) (citations and internal quotation marks omitted).

### B. Special Appearance

Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. We have consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *See id.* at 337; *Moki Mac*, 221 S.W.3d at 574; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002); *BMC Software*, 83 S.W.3d at 793; *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965). Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *E.g., Retamco Operating*, 278 S.W.3d at 337.[3] Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.[4]

If the plaintiff fails to plead facts bringing the defendant within reach

---

3. The adoption of the special appearance was a significant development in Texas law. For most of its history prior to 1962, Texas law did not recognize a special appearance, and a nonresident defendant who appeared in a Texas court waived any objection to personal jurisdiction. *See Atchison, Topeka & Santa Fe Ry. Co. v. Stevens*, 109 Tex. 262, 206 S.W. 921, 921 (1918) ("A special appearance is unknown to our practice. The filing by a defendant of any defensive pleading, though it be only for the purpose of challenging the jurisdiction of the court, constitutes an appearance and a submission to the jurisdiction of the forum."); *see also York v. Texas*, 137 U.S. 15, 21, 11 S.Ct. 9, 34 L.Ed. 604 (1890) (holding that Texas's rule disallowing special appearances did not violate due process); E. Wayne Thode, *In Personam Jurisdiction; Article 2031B, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 TEX L.REV 279, 292–97 (1964) (recounting early special-appearance jurisprudence). Thus, a nonresident defendant wishing to challenge personal jurisdiction in Texas had but one choice—default and challenge jurisdiction collaterally when the plaintiff came to enforce the judgment in the defendant's home state. Faced with a waiver of any objection to jurisdiction or a default on the merits, the nonresident defendant had to choose between two unpleasant alternatives. Seeking to remedy this dilemma, this Court promulgated Texas Rule of Civil Procedure 120a, which allows nonresident defendants to specially appear for the sole purpose of challenging the trial court's jurisdiction over them or their property. *See* TEX.R. CIV. P. 120a.

4. While the pleadings are essential to frame the jurisdictional dispute, they are not dispositive. Rule 120a requires a special appearance to be made by sworn motion, TEX R. CIV. P. 120a(1), and also requires the trial court to "determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony," TEX.R. CIV. P. 120a(3). Even so, this additional evidence merely supports or undermines the allegations in the pleadings.

of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction. *See Siskind v. Villa Found. for Educ., Inc.* 642 S.W.2d 434, 438 (Tex.1982) ("[T]he only evidence offered to negate jurisdiction was [a defendant's] testimony that she and the other individuals were residents of Arizona.... In view of [the plaintiff's] failure to allege any act by these individuals in Texas, we believe that the [defendants] have sustained their burden.").[5] When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, *see* TEX.R. CIV. P. 63, thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be.

■■■■ The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations,[6] and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction.[7] Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.[8]

## C. Analysis

■■■■ Turning to the case at hand, the only relevant prong of the Texas long-arm statute extends jurisdiction over a nonresident who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2).[9]

GIC failed to plead facts within the reach of the long-arm statute because it did not allege that the Officers committed any tortious acts in Texas. As noted, GIC's live pleading contains no allegations

---

5. *See also Perna v. Hogan,* 162 S.W.3d 648, 653 (Tex.App.-Houston [14th Dist.] 2005, no pet.) ("If the plaintiff does not plead jurisdictional allegations, *i.e.,* that the defendant has committed any act in Texas, the defendant can satisfy its burden of negating all bases of personal jurisdiction by presenting evidence that it is a nonresident at the special appearance hearing."); *Frank A. Smith Sales, Inc. v. Atl. Aero, Inc.,* 31 S.W.3d 742, 747 (Tex.App.-Corpus Christi 2000, no pet.) ("[The plaintiff's] third-party petition stated only that [the defendant] had committed acts of negligence, without specifying what those negligent acts were, or where they occurred. Therefore, [the] petition fell well short of pleading sufficient allegations to show jurisdiction in Texas.").

6. If the plaintiff's evidence does not fall within the scope of the factual allegations in the pleading, then the plaintiff should amend the pleading for consistency.

7. The losing party in the trial court can challenge the factual sufficiency of the evidence in the court of appeals. *E.g., BMC Software,* 83 S.W.3d at 794.

8. The losing party in the trial court can challenge the legal sufficiency of the evidence in the court of appeals and in this Court. *E.g., id.* The trial court's legal conclusions are, as noted, reviewed de novo. *See id.*

9. We recognize that § 17.042 is non-exclusive, *see BMC Software,* 83 S.W.3d at 795, but GIC does not separately allege that the Officers conducted business in Texas, and the only remaining claims against them are for tortious activity, making this subsection directly applicable. Section 17.042(1), regarding performance of a contract in Texas, does not apply as the Officers were not parties to Diva's contract with GIC, nor did they guarantee it.

that the Officers' wrongdoing occurred in Texas. Regarding the fraud claim, GIC did allege several fraudulent acts (e.g., providing false affidavits to Meristar and misrepresenting to GIC that it would be paid in full), but it did not allege that any fraudulent acts occurred in Texas. Regarding the trust-fund claims, GIC did not allege that the Officers used or retained the trust funds in Texas, nor that they submitted false affidavits to Meristar in Texas. Thus, although GIC has alleged two claims of wrongdoing, it has not alleged that any acts giving rise to these two claims occurred in Texas.

Because GIC failed to plead jurisdictional facts, the Officers could, and did, meet their burden to negate all bases of jurisdiction by proving that they do not live in Texas. *See Siskind*, 642 S.W.2d at 438. GIC did not challenge that fact, nor did it present any responsive evidence establishing the requisite link with Texas. The most relevant piece of evidence is an affidavit of GIC's president stating that Laura Hofstatter promised him payment. But even this affidavit does not state where this conversation occurred or make any connection with Texas. In short, GIC's rebuttal evidence is as silent as its pleadings regarding the Officers' Texas contacts related to its claims. Having met their burden of proof, the Officers' special appearance should have been granted.

Although the trier-of-fact may ultimately conclude that Kelly and Hofstatter violated the Texas Trust Fund Act and committed fraud, the mere commission of an act does not grant Texas courts jurisdiction over the actor. Rather, as we have frequently emphasized, the requirements of due process must be upheld, particularly the connection between the defendant, the forum, and the litigation in the specific jurisdiction context. *See, e.g., Retamco Operating*, 278 S.W.3d at 338.

The majority in the court of appeals focused on a corporate officer's potential for individual liability under the Texas Trust Fund Act, finding sufficient GIC's allegations that the Officers controlled and directed funds received under Diva's contract with Meristar. *See* 262 S.W.3d at 84–86. But the mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns. A state is powerless to create jurisdiction over a nonresident by establishing a remedy for a private wrong and a mechanism to seek that relief. Instead, jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business. *See, e.g., Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (focusing the inquiry on the defendant's presence in, or contacts with, the forum state); *Retamco Operating*, 278 S.W.3d at 338 ("We focus on the defendant's activities and expectations when deciding whether it is proper to call the defendant before a Texas court."); *Moki Mac*, 221 S.W.3d at 575 ("[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person."); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex.2005) ("[I]t is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228)). The concept of minimum contacts is rooted in the notion that a defendant may reasonably be haled into the forum state's courts when it purposefully, not randomly or fortuitously, engages in activities there. *See, e.g., Michiana*, 168 S.W.3d at 785. Thus, merely pleading that Kelly and Hofstatter violated the Texas Trust Fund Act is not enough; GIC must also plead and, when

challenged by the defendants, present evidence that the Officers' relevant acts (i.e., those connected to GIC's claims) occurred, at least in part, in Texas.

The court of appeals also erred by allowing GIC's fraud claim to proceed despite the lack of allegations and evidence that any part of the claim originates from the Officers' conduct in Texas. *See* 262 S.W.3d at 86–87. The court reasoned that "[t]he Officers' alleged fraud sufficiently 'relates to' conduct purposefully directed toward Texas." *Id.* But we rejected the concept of directed-a-tort jurisdiction in *Michiana,* instead affirming the importance of the defendant's contacts with the forum state. *See* 168 S.W.3d at 788–92. While we noted that "on one occasion the United States Supreme Court found specific jurisdiction based on alleged wrongdoing intentionally directed at a forum resident," the defendant's conduct in that case still "constituted a substantial 'presence' in the state." *Id.* at 789 (discussing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). Here, as noted, GIC has not alleged that the Officers engaged in activities that constitute any presence— let alone a substantial presence—in this state.

## IV. Conclusion

Because GIC's pleadings lack Texas-specific allegations, the Officers negated all jurisdictional bases by proving that they do not live in Texas, and GIC has not presented any evidence to the contrary.[10] Accordingly, we reverse in part the court of appeals and render judgment dismissing GIC's claims against Kelly and Hofstatter for lack of personal jurisdiction.

10. Because we decide this case based on the lack of alleged minimum contacts with Texas,

we do not discuss the fair-play-and-substantial-justice prong of personal jurisdiction.