

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00153-CV

**THE ROMAN CATHOLIC BISHOP OF SAN BERNARDINO**
and Bishop Gerald R. Barnes,
Appellants

v.

John **DOE**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-08589
Honorable Antonia Arteaga, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: July 24, 2019

REVERSED AND RENDERED

In this interlocutory appeal, we review the trial court's orders denying special appearances filed by the Roman Catholic Bishop of San Bernardino, a California non-profit corporation, also known as the Diocese of San Bernardino ("Diocese) and the Most Reverend Gerald R. Barnes, a California resident who serves as the chief officer and bishop of the Diocese (collectively referred to herein as "the California defendants"). To support Texas's specific jurisdiction over the California defendants, plaintiff John Doe alleged Jesus Armando Dominguez was employed by the Diocese and was under the supervision and control of the Diocese and Bishop Barnes's

predecessors. The trial court concluded Texas has specific jurisdiction over the California defendants. We disagree. As a result, we reverse the orders denying the special appearances and render judgment dismissing the California defendants from the cause.

## BACKGROUND

According to Doe's live petition, in 1980, he was a minor living at an orphanage near Assumption Seminary in San Antonio, Texas when Dominguez, a student at the seminary, sexually abused him. In 2015, Doe filed the underlying lawsuit asserting claims arising out of that sexual abuse against the Roman Catholic Archdiocese of San Antonio, by and through the Apostolic Administrator and Archbishop Gustavo Garcia-Siller and Archbishop Emeritus Patrick Flores, their predecessors and successors, as Archbishop of the Roman Catholic Archdiocese of San Antonio, Father Jesus Armando Dominguez, and Father Virgilio Elizondo. He later amended his lawsuit to include claims against Elizondo's estate and the California defendants.

After being brought into the lawsuit, the California defendants filed special appearances which the trial court denied. The California defendants then filed this interlocutory appeal.

## STANDARD OF REVIEW

Whether a Texas court may exercise personal jurisdiction over a nonresident defendant presents a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). Where, as here, the trial court does not make findings of fact and conclusions of law, the reviewing court infers all facts necessary to support the judgment that are supported by the evidence. *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 558; *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017).

**PERSONAL JURISDICTION**

"Texas's long-arm statute extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit." *M & F Worldwide Corp.*, 512 S.W.3d at 885 (internal quotation marks omitted). "A state's exercise of jurisdiction comports with federal due process if the nonresident defendant has 'minimum contacts' with the state and the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (internal quotation marks omitted).

"A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559 (internal quotation marks omitted). "Three principles govern the purposeful-availment analysis: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction such that it impliedly consents to suit there." *M & F Worldwide Corp.*, 512 S.W.3d at 886 (internal quotation marks omitted).

"A defendant's contacts may give rise to general or specific jurisdiction." *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559. In this case, Doe only asserted specific jurisdiction. "For a Texas court to exercise specific jurisdiction over a defendant, (1) the defendant's contact with Texas must be purposeful, and (2) the cause of action must arise from those contacts." *Id*. (internal quotation marks omitted). "Thus, when analyzing specific jurisdiction, we focus on the relationship between the forum, the defendant, and the litigation." *Id*. Stated differently, "[f]or a Texas court to exercise specific jurisdiction over a defendant, the defendant's purposeful contacts

must be substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Id*. at 559-60.

## BURDEN-SHIFTING

"In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof." *Id*. at 559. "The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id*. "Once it has done so, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff." *Id*. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

"The defendant can negate jurisdiction on either a factual or legal basis." *Id*. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. at 659. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.

## ANALYSIS

The California defendants supported their special appearances with affidavits averring they are both California residents and have no employees, property, offices, bank accounts, or mailing addresses in Texas. The affidavits further assert they did not commit a tort in Texas, sell or make any products in Texas, or file any lawsuits in Texas. Although the affidavits admit Dominguez

worked for the Diocese in California as a Spanish translator before he attended Assumption Seminary, they assert Dominguez was not an agent or employee of the Diocese while he attended the seminary. At most, the affidavits establish the Diocese: (1) recommended Dominguez as a candidate for the seminary and approved the seminary's recommendations to transition Dominguez through stages of ministry; and (2) paid Dominguez's tuition, healthcare insurance costs, and a stipend while he attended the seminary.[1] The affidavits also establish, however, the seminary controlled the decision to admit Dominguez, and the California defendants did not supervise or oversee Dominguez while he attended the seminary and had no control over Dominguez's class schedule, daily activities, social life, or daily ministerial duties. The affidavits further establish the California defendants received no reports from the seminary indicating Dominguez was involved in any sexual misconduct. Finally, the affidavits establish Bishop Barnes did not become the chief officer and bishop of the Diocese until 1996, which was many years after Dominguez attended the seminary from 1980 to 1983.

Because the affidavits presented by the California defendants disproved Doe's allegations that Dominguez was an employee of or was supervised and controlled by the California defendants, the burden shifted to Doe to produce evidence affirming his allegations. *Id*. As previously noted, Doe risked dismissal of his claims against the California defendants if he failed to present evidence establishing personal jurisdiction. *Id*.

Doe filed a response alleging Dominguez had taken an oath of service to the Diocese, and that the Diocese employed him while he attended Assumption Seminary. Doe's response further alleged the seminary sent annual evaluations to the Diocese, and those evaluations should have

---

[1] The Diocese made the payments because Dominguez was aspiring to be a priest for the Diocese.

alerted the Diocese to Dominguez's transgressions. Doe's response described evidence "which shall be given to the Court under seal as confidential documents."[2]

The only affidavit or evidence attached to Doe's response was his attorney's affidavit. Rule 120a which governs special appearances, however, requires affidavits to be "made on personal knowledge." TEX. R. CIV. P. 120a. In his brief, Doe concedes his attorney did not have personal knowledge of the facts set forth in the response. Furthermore, even if we considered the affidavit provided by Doe's attorney as verifying the response, thereby making it a sworn pleading, "pleadings are not competent evidence, even if sworn or verified." *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *see also CMC Steel Fabricators, Inc. v. Red Bay Constructors, Inc.*, No. 14-13-00084-CV, 2014 WL 953351, at *8 (Tex. App.—Houston [14th Dist.] Mar. 11, 2014, no pet.) (mem. op.) (noting verified pleading in special appearance context is not evidence); *Gen. Elec. Co. v. Cal. Ins. Guar. Ass'n*, 997 S.W.2d 923, 925 (Tex. App.—Beaumont 1999, pet. denied) (noting sworn pleadings and oppositions to various special appearances were not evidence).

Although the reporter's record reflects the trial court reviewed—and apparently relied on—documents presented to it at the hearing, those documents were not offered into evidence and are not included in the reporter's record. Accordingly, they cannot be considered on appeal. *See Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex. 1990) (noting attorneys' statements about evidentiary matters could not be considered on appeal because exhibits tendered but not admitted into evidence were not part of the record); *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 419 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom.*, *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016)

---

[2] Early in this litigation, the trial court signed an Agreed Protective Order concerning the production of confidential information. That Agreed Protective Order, however, would not prevent the parties from admitting evidence under seal.

(noting appellate court would not consider any exhibits not expressly admitted by the trial court where the record established the trial court reserved its ruling on objections to the exhibits and reviewed them in chambers but the record did not indicate whether the trial court admitted the exhibits as evidence). Because Doe failed to present any evidence affirming his allegations after the affidavits presented by the California defendants shifted the burden to him, the claims against the California defendants must be dismissed. *Kelly*, 301 S.W.3d at 658.

## CONCLUSION

The trial court's orders denying the California defendants' special appearances are reversed, and the claims against the California defendants are dismissed.

Beth Watkins, Justice