**Affirm and Opinion Filed November 16, 2022**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

**No. 05-21-01056-CV**

**LG CHEM, LTD., Appellant**
**V.**
**CHRISTOPHER W. TULLIS, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-05481**

## MEMORANDUM OPINION

Before Justices Nowell and Smith[1]
Opinion by Justice Nowell

Appellee Christopher W. Tullis sued appellant LG Chem, Ltd. and others for injuries he allegedly suffered when an 18650 lithium-ion battery manufactured by LG Chem exploded in his pocket. LG Chem, a South Korean company, filed a special appearance, which the trial court denied. In this interlocutory appeal, LG Chem argues the trial court erred by denying its special appearance because Tullis failed to allege the existence of purposeful contacts between LG Chem and Texas

---

[1] The Honorable Leslie L. Osborne participated in the submission of this case; however, she did not participate in the issuance of this memorandum opinion due to her resignation on October 24, 2022.

that relate or give rise to his claim, and the undisputed evidence disproves the existence of such contacts. We affirm.[2]

BACKGROUND

Tullis sued LG Chem and others after a lithium-ion 18650 battery used in an e-cigarette device exploded and injured him. Tullis alleged LG Chem marketed, manufactured, designed, and sold defective 18650 lithium-ion batteries. Further, he alleged, LG Chem placed its products, including its 18650 lithium-ion batteries, into the stream of commerce with the expectation and intent that they would be sold in Texas and they were sold in Texas, such that LG Chem purposefully availed itself of the privileges and benefits of doing business in Texas.

## A. LG Chem's Special Appearance

LG Chem filed a special appearance supported by an affidavit from Joon Young Shin, a senior manager and authorized company representative. Shin averred that LG Chem is not incorporated or headquartered in Texas. It is a Korean company with its headquarters and principal offices in Seoul, South Korea. LG Chem has

_____

[2] This appeal is one of several cases in Texas involving allegedly defective 18650 battery cells manufactured by LG Chem and used in vaping or electronic cigarette devices and in which LG Chem has filed special appearances. *See Hause v. LG Chem, Ltd.*, No. 08-20-00197-CV, 2022 WL 5241787 (Tex. App.—El Paso Oct. 6, 2022, no pet. h.) (reversing trial court's order granting LG Chem's special appearance); *LG Chem, Ltd. v. Turner*, No. 14-19-00326-CV, 2021 WL 2154075 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (reversing trial court's denial of LG Chem's special appearance and remanding for jurisdictional discovery); *LG Chem, Ltd. v. Granger,* No. 14-19-00814-CV, 2021 WL 2153761 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.)(mem. op.) (reversing trial court's order denying special appearance and rendering order of dismissal for claims against LG Chem); *LG Chem Am., Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, pet. filed)(mem. op.) (affirming trial court's order denying LG Chem's special appearance); *Schexnider v. E-Cig Cent., LLC*, No. 06-20-00003-CV, 2020 WL 6929872 (Tex. App.—Texarkana Nov. 25, 2020, no pet.) (affirming trial court's order granting LG Chem's special appearance). In its *Hause* opinion, the Eighth Court of Appeals summarized and analyzed these cases. *See Hause*, 2022 WL 5241787.

never had any physical presence in Texas, registered to do business in Texas, owned or leased any real property in Texas, or had a registered agent, telephone number, post office box, mailing address, or bank account in Texas.

Shin averred that LG Chem manufactures lithium-ion "power cells for use in specific applications by sophisticated companies." The company does not design, manufacture, distribute, advertise, or sell these power cells as standalone batteries for sale to individual consumers and has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to do so either. Further, Shin averred, LG Chem does not design, manufacture, distribute, or sell lithium-ion power cells for use by individual consumers as replaceable, rechargeable power cells in electronic cigarettes or vaping devices. Shin denied that the battery that allegedly injured Tullis was designed or manufactured in Texas.

After LG Chem filed its special appearance, Tullis sought and the trial court permitted some jurisdictional discovery.

B.     Tullis's Response to LG Chem's Special Appearance

Tullis supported his response to the special appearance with information LG Chem provided in discovery. In its discovery responses, LG Chem acknowledged that if the cell that harmed Tullis was an 18650 cell, then it would have been manufactured by LG Chem in Korea and China. Tullis asked LG Chem to identify every purchaser, distributor, and reseller to whom it or its American subsidiaries sold

"the LG MG1 and/or LG HG2,[3] and/or the 18650 battery" in Texas since January 1, 2012. LG Chem responded with a list of ten companies, including Green Battery Technologies LLC and Black and Decker, Inc., which has multiple manufacturing plants in Texas. Tullis provided invoices showing LG Chem shipped 18650 batteries to Green Battery Technologies in Texas. LG Chem also provided a "list of LG Chem's and its American subsidiaries' annual revenue related to sales and shipments of 18650 lithium-ion cells into Texas since 2012." The revenue numbers are:

- 2012: $140,884
- 2013: $64,170
- 2014: $1,811,845
- 2015: $481,556
- 2016: $260,270
- 2017: $1,651,148
- 2018: $1,095,559
- 2019: $138,600
- 2020: $4,040,710.

After considering the pleadings, evidence, and arguments of counsel, the trial court overruled LG Chem's special appearance. This appeal followed.

GOVERNING LAW

A. **Personal Jurisdiction**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, a trial court does not issue findings

---

[3] No party clarified what "LG MG1" and "LG HG2" are. However, from the record, they appear to be types of 18650 batteries.

of fact and conclusions of law with its ruling on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.*

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Id.* The long-arm statute provides in relevant part that "[i]n addition to other acts that may constitute doing business," a nonresident does business in Texas if the nonresident commits a tort in whole or in part in the state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. However, a plaintiff alleging that a tort was committed in Texas does not necessarily satisfy the United States Constitution. *Bell*, 549 S.W.3d 559.

To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* Thus, the defendant's activities "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas

court." *Id*. Courts consider three factors when determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)).

A defendant's contacts may give rise to general or specific jurisdiction. *Id*. General jurisdiction, which is not at issue in this case, is established by continuous and systematic contacts with a state. *Id.* Specific jurisdiction exists when the cause of action arises from or is related to a defendant's purposeful activities in the state. *Id*. For a Texas court to exercise specific jurisdiction over a defendant, "(1) the defendant's contact with Texas must be purposeful, and (2) the cause of action must arise from those contacts." *Id.* When analyzing specific jurisdiction, we focus on the relationship between the forum, the defendant, and the litigation. *Id.*

## B. Purposeful Availment

The touchstone of jurisdictional due process is "purposeful availment." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 9 (Tex. 2021) (cleaned up). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* Where the defendant has "deliberately"

–6–

engaged in significant activities within a state, he "manifestly has availed himself of the privilege of conducting business there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (cleaned up)). And because such activities are shielded by the "benefits and protections" of the forum's laws, it is "presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* (quoting *Rudzewicz*, 471 U.S. at 476).

When assessing minimum contacts, we look only to the defendant's contacts with the forum and not the "unilateral activity" of some third party to determine whether minimum contacts with the state are satisfied. *Id.* Nor will "fortuitous" or "attenuated" contacts be relied upon to satisfy the requirements of due process. *Id.* Rather, whether due process is satisfied depends upon "the quality and nature of the activity in relation to the fair and orderly administration of the laws." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 319).

When a corporation purposefully avails itself of the privilege of doing business in the forum state, it has "clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A nonresident defendant may "purposefully avoid" a particular jurisdiction "by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Id.* But "a truly interstate business may not

shield itself from suit by a careful, but formalistic structuring of its business dealings." *Id.*

"The stream-of-commerce doctrine is a useful tool to conceptualize minimum contacts in product liability cases." *Id.* Its utility derives from the recognition that specific jurisdiction over nonresident manufacturers is often premised on "indirect" sales by independent distributors or agents. *Id.* But a seller's awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product in the stream into an act purposefully directed toward the forum State." *Id.* at 9-10. Texas courts require "additional conduct" evincing "an intent or purpose to serve the market in the forum State," whether directly or indirectly. *Id.* at 10 (cleaned up). Evidence of such additional conduct may include advertising in the forum state, soliciting business through salespersons, or creating, controlling, or employing the distribution system that brought the product into the forum state. *Id.*

While "a nonresident need not have offices or employees in a forum state" to purposefully avail itself of the forum, the operation of a sales and distribution network or directing marketing efforts to the forum state in the hope of soliciting sales may render a nonresident subject to the state's jurisdiction in disputes arising from that business. *Id.* (cleaned up).

## C. Burden Shifting

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Bell*, 549 S.W.3d at 559. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id*. The plaintiff "must meet its initial burden on a special appearance by pleading, *in its petition*, sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.) (en banc). Once it has done so, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Bell*, 549 S.W.3d at 559. The defendant can negate jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id*. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. (footnotes omitted). A defendant negates jurisdiction on a legal basis by showing:

> [E]ven if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id*.

ANALYSIS

## A.	Pleading Sufficient Jurisdictional Allegations

LG Chem, a foreign corporation with its principal place of business in South Korea, is a nonresident defendant. Accordingly, Tullis had the initial burden of pleading sufficient allegations to permit a court to exercise personal jurisdiction over the company. "This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas." *Saidara*, 633 S.W.3d at 126. To meet his burden, Tullis pleaded that LG Chem placed its products, including its 18650 batteries, into the stream of commerce with the expectation and intent that the batteries would be sold in Texas, and the company's 18650 batteries were sold in Texas. Further, Tullis alleged, he was injured by one of LG Chem's defectively designed and manufactured 18650 batteries that he purchased in Texas when it exploded. We conclude these allegations are sufficient to meet Tullis's minimal initial pleading burden. *See id.*

## B.	Purposeful Availment

LG Chem then bore the burden to negate all bases of jurisdiction alleged by Tullis. *See Bell*, 549 S.W.3d at 559. LG Chem does not deny that it has contacts with Texas; rather, LG Chem denies that it has ever sought to serve a Texas *consumer* market for standalone batteries. LG Chem acknowledges it manufactures 18650 power cells for use in specific applications by sophisticated manufacturers, but argues that, "[a]t most, LG Chem manufactured and placed into the stream of

–10–

commerce a cell that eventually reached Texas and Tullis as a standalone consumer battery because of the unilateral acts of third parties."

LG Chem's only evidence supporting its special appearance is Shin's affidavit. While Shin averred that LG Chem manufactures lithium-ion "power cells for use in specific applications by sophisticated companies" and the batteries are not designed or manufactured as standalone batteries for sale to individual consumers, he did not deny that LG Chem manufactured and distributed the 18650 batteries to Texas customers for some applications. The documents produced during jurisdictional discovery confirm that LG Chem shipped its 18650 batteries into Texas, it sold its 18650 batteries to at least ten Texas customers, and its sales to Texas customers produced several million dollars in revenue for LG Chem during the preceding eight years. Accordingly, Tullis's undisputed jurisdictional allegations and the evidence show that LG Chem sold batteries of the type that allegedly injured Tullis to customers in Texas, did so for many years, and earned millions of dollars in revenue from those sales. *See Morgan*, 2020 WL 7349483, at *7. Although LG Chem did not sell the 18650 battery that injured Tullis directly to him and, based on the evidence, did not intend to serve a consumer market in Texas, when a foreign manufacturer "specifically targets Texas as a market for its products," as LG Chem did, "that manufacturer is subject to a product liability suit in Texas based on a product sold here, even if the sales are conducted through a Texas distributor or

affiliate." *Id.* at *9 (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010)).

LG Chem argues that jurisdiction does not exist over a nonresident that merely places a product into the stream of commerce with an awareness that the product could move into the forum state, which is what happened in this case. We disagree with LG Chem's analysis. Tullis provided evidence of more than just a few isolated sales from LG Chem to Texas companies. Tullis's evidence shows LG Chem has shipped batteries to at least ten companies in Texas, shipped batteries into Texas for at least eight consecutive years, and earned several million dollars in revenue from those shipments. The evidence demonstrates that LG Chem's batteries did not fortuitously end up in Texas after being placed in the stream of commerce; the evidence shows LG Chem purposefully engaged in business in the Texas market. LG Chem had more than mere knowledge that its products could end up in Texas — LG Chem itself shipped the products to Texas. *See Hause*, 2022 WL 5241787, at *9 (citing *Semperit*, 508 S.W.3d at 582 (noting the manufacturer's contacts went beyond foreseeability that its products would be used in Texas because it actually shipped those products to Texas)). LG Chem did more than place its product into the stream of commerce.

LG Chem argues throughout "that its contacts do not evince purposeful availment of the e-cigarette or vaping industry or the market for standalone consumer batteries in Texas." *Id.* at *10 (citing *Kelly*, 301 S.W.3d at 658–59). "This

–12–

nuance is not relevant for jurisdictional purposes because the longstanding inquiry is whether LG Chem targeted the Texas market, not whether it targeted the market in a particular industry." *Id.* (citing *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, ⸺ U.S. ⸺, 137 S.Ct. 1773, 1779, 198 L.Ed.2d 395 (2017) ("The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State."); *Moki Mac*, 221 S.W.3d at 575 (personal jurisdiction is proper when a defendant establishes minimum contacts with the forum state)).

The undisputed evidence shows LG Chem deliberately engaged in significant activities in Texas and purposefully availed itself of the privileges of conducting business in Texas, thus invoking the benefits and protections of Texas law. By purposefully availing itself of the privilege of doing business in Texas, LG Chem had clear notice it would be subject to suit in the state.

### C.    Arise from or Relate to

For specific jurisdiction, LG Chem's alleged liability must arise from or be related to its purposeful contacts with the state; that is, there must be a substantial connection between the company's forum-state contacts and the underlying litigation. *See Spir Star*, 310 S.W.3d at 872; *Moki Mac*, 221 S.W.3d at 585. When considering whether the substantial connection requirement is met in this case, we separate LG Chem's jurisdictional arguments from its arguments on the merits. *See Hause*, 2022 WL 5241787, at *12. LG Chem argues it only sells its battery cells to

–13–

"sophisticated" manufacturers and not to individual consumers for use in electronic cigarettes or vaping devices, and Shin's affidavit states that LG Chem manufactures the 18650 power cells "for use in specific applications by sophisticated manufacturers." "LG Chem has embellished its argument with nuances that pertain to the merits of a products liability case." *Id*. (citing *Morgan*, 2020 WL 7349483, at \*10 (stating the same)). "That a consumer abuses a defendant's product by using it in an application it was not designed for or in a manner the defendant did not intend, thereby causing injury, is not jurisdictionally relevant." *Id.* (citing *Bell*, 549 S.W.3d at 560 ("Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will.")). Rather, so long as the nonresident defendant targets the forum market for the precise product at issue in the litigation, the defendant is subject to jurisdiction for any claims arising out of or related to its sale of the allegedly defective products. *Id.* (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1027 (2021)).

As discussed above, LG Chem does not deny it placed 18650 batteries, the type of battery that allegedly injured Tullis, into the stream of commerce with the expectation and intent that the batteries would be sold in Texas, and the company's products were sold in Texas. LG Chem fostered a market for its lithium-ion batteries in Texas, which is the precise product at issue in this case. *See Hause*, 2022 WL 5241787, at \*11. Tullis's claim that these batteries are defective, which caused his vaping device to explode and injure him, is "related to a defendant's contacts where

–14–

the defendant serves a market for the allegedly defective products in the forum state. *Id.* (discussing *Ford*, 141 S.Ct. at 1027). "That is, where the defendant serves a market for allegedly defective products in a forum state and a plaintiff sues for injury related to the defect, jurisdiction over the defendant is proper." *Hause*, 2022 WL 5241787, at *11 (discussing *Ford*, 141 S.Ct. at 1027).

We conclude the substantial-connection requirement also is met in this case.

### D.     Fair Play and Substantial Justice

Because LG Chem's Texas contacts support jurisdiction, the next inquiry is whether jurisdiction is consistent with traditional notions of fair play and substantial justice. *Spir Star*, 310 S.W.3d at 878. However, LG Chem does not raise any argument that a trial court exercising jurisdiction would offend traditional notions of fair play and substantial justice. *See Spir Star*, 310 S.W.3d at 878–79 (party must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable" to defeat jurisdiction). Accordingly, any argument LG Chem could have raised has been waived. *See Morgan,* 2020 WL 7349483, at *13 (concluding LG Chem waived argument that asserting jurisdiction would offend traditional notions of fair play and substantial justice by not arguing the issue).

CONCLUSION

We overrule LG Chem's sole issue, and we affirm the trial court's order denying LG Chem's special appearance.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

211056f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LG CHEM, LTD., Appellant

No. 05-21-01056-CV        V.

CHRISTOPHER W. TULLIS,
Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-05481.
Opinion delivered by Justice Nowell.
Justice and Smith participating.

In accordance with this Court's opinion of this date, the trial court's November 12, 2021 Order overruling LG Chem, Ltd.'s special appearance is **AFFIRMED**.

It is **ORDERED** that appellee Christopher W. Tullis recover his costs of this appeal from appellant LG Chem, Ltd.

Judgment entered this 16th day of November 2022.