

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00303-CV

Wendy **PADILLA-MADDEN**,
Appellant

v.

Cristian **SANDOVAL**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2024-CI-24868
Honorable Elizabeth Martinez, Judge Presiding

Opinion by:  Velia J. Meza, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: March 11, 2026

AFFIRMED

Wendy Padilla-Madden brings this interlocutory appeal from the denial of her special appearance. Because we conclude that Madden was subject to personal jurisdiction in Texas, we affirm.

## BACKGROUND

Sometime in 2021 Cristian Sandoval, a Texas resident, and Madden, a resident of Alabama, entered into an oral agreement where—according to Sandoval—Madden would share the proceeds

she obtained from serving as trustee for a third party. On November 1, 2024, Sandoval filed suit against Madden claiming she breached their oral agreement and owes him $350,000.

On January 1, 2025, Madden filed her special appearance challenging both general and specific jurisdiction. She alleged that she is an Alabama resident, has no permanent presence in Texas, and has not purposefully availed herself of the privileges and benefits of Texas.

On April 25, 2025, the trial court denied Madden's special appearance. This interlocutory appeal followed.

## DISCUSSION

In her sole issue on appeal, Madden argues that the trial court erred by denying her special appearance since she did not purposefully avail herself of the privilege of conducting activities within Texas and the claim brought against her does not relate to her limited contacts. We disagree.

### 1. Standard of Review

We review a trial court's denial of a special appearance de novo. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). "If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023).

### 2. Personal Jurisdiction Framework

The Texas long-arm statute provides that a nonresident does business in Texas if they contract "with a Texas resident and either party is to perform the contract in whole or in part in" Texas. TEX. CIV. PRAC. & REM. CODE § 17.042(1). The long-arm statute's "broad language extends

Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (internal quotation marks omitted). And federal due process permits personal jurisdiction if the nonresident has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Whether jurisdiction is general or specific depends on the nonresident's contacts. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). However, because Sandoval concedes that general jurisdiction is inapplicable, we only address specific jurisdiction.

Specific jurisdiction exists when a nonresident's more limited contacts purposefully availed them of the privilege of conducting activities within the state and the claims brought against the nonresident arise from or relate to such limited contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). In determining whether a nonresident availed themselves of the forum state, we examine their purposeful contacts; "unilateral activity of another party or third person, as well as random, isolated, or fortuitous contacts by the [nonresident], are insufficient to" establish purposeful availment. *Witty Yeti, LLC v. Plummer*, No. 04-22-00075-CV, 2022 WL 3046942, at *6 (Tex. App.—San Antonio Aug. 3, 2022, no pet.) (mem. op.).

In the context of special appearances, we apply shifting burdens of proof. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Sandoval bore the initial burden to allege sufficient facts to bring Madden within the provisions of the Texas long-arm statute. *Id.* If this pleading requirement was satisfied, the burden shifted to Madden to negate all bases of personal jurisdiction alleged. *Kelly*, 301 S.W.3d at 658.

### 3.  Purposeful Availment

The "touchstone of jurisdictional due process is purposeful availment." *Luciano*, 625 S.W.3d at 9 (cleaned up). Madden must have deliberately committed some act which purposefully availed her of the privilege of conducting activities within Texas, "thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### 3.1 The Oral Agreement

Sandoval alleged that sometime prior to August 20, 2021, he and Madden entered into an oral agreement in which he would provide Madden with the opportunity to serve as trustee to the Gan Shares Trust in exchange for half of her trustee compensation. Madden challenged the existence of the oral agreement; however, the record does not support her contention.

The undisputed facts are that Sandoval reached out to Madden and informed her that his wife, Araceli Garcia's, employer, Alonso Ancira Elizondo, was having difficulty appointing a trustee. Subsequently, Sandoval informed Garcia that Madden would serve as trustee. And Madden was ultimately retained to serve as the trustee of the Gan Shares Trust.

Madden counters that the agreement alleged by Sandoval does not exist. However, Madden admitted to paying Sandoval $500,000 after earning $1,000,000 in trustee compensation—an amount consistent with the terms of the agreement. Although Madden contends that the payment was for Sandoval's company, NICAM Strategies, to conduct a marketing study for her law firm, she testified that the study "didn't occur. [Sandoval] never performed . . . the services." Finding Madden's explanation for the payment unconvincing, we conclude that Madden failed to demonstrate the non-existence of the contract.[1]

---

[1] Although we find that Madden did not conclusively prove the non-existence of the agreement, we do not hold that Sandoval conclusively proved the agreement. Our jurisdictional inquiry only requires a determination of appellant's purposeful availment of Texas in connection with the underlying dispute. The issue of ultimate liability is reserved for the trial on the merits. *See Ross F. Meriwether & Assocs., Inc. v. Aulbach*, 686 S.W.2d 730, 732 (Tex. App.—San

3.2 <u>Madden's Contacts as Trustee for the Gan Shares Trust</u>

Sandoval also alleged that after he obtained the opportunity for Madden to serve as trustee, Madden traveled to San Antonio, Texas, for meetings and to execute the Gan Shares Trust Agreement with Ancira, and two Mexican entities with business addresses located in Texas. After being appointed trustee, Madden took possession over shares of stock in a safe deposit box located in San Antonio, Texas. Madden does not dispute these allegations; instead, she only challenges their relatedness.

Viewing Madden's purposeful contacts with respect to Texas in totality, we cannot say that her contacts were "random, isolated, or fortuitous." *Witty Yeti, LLC*, 2022 WL 3046942, at *6. Therefore, Madden's contacts are sufficient to hold that Madden purposefully availed herself of the privilege of conducting activities within Texas.

4. <u>Relatedness</u>

Despite our finding that Madden purposefully availed herself of Texas, specific jurisdiction is only permitted if Sandoval's claim arises out of or relates to Madden's contacts with Texas. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585–86 (Tex. 2007). The "arises out of *or* relates to" standard provides two avenues for which a nonresident's contacts can relate to the underlying suit. *Ford Motor Co.*, 592 U.S. at 362. "The first half of the standard asks about causation; but the back half . . . contemplates that some relationship will support jurisdiction without a causal showing." *Id.* Nevertheless, the "relates to" standard still "incorporates real limits, as it must to adequately protect defendants foreign to" the state. *Id.*

---

Antonio 1985, no writ) (holding that the issue of ultimate liability is separate from jurisdiction) ; *see also Jerome I. Wright & Assocs., Inc. v. First Metro Ltd. P'ship*, No. 03-04-00283-CV, 2004 WL 2186330, at *6 (Tex. App.—Austin Sept. 30, 2004, no pet.) (mem. op.) (same).

Sandoval's suit stems from Madden's failure to pay him $350,000 pursuant to their agreement. As already discussed, in exchange for Sandoval providing Madden the opportunity to serve as trustee, Madden agreed to pay Sandoval half of her trustee compensation *only* "if she was retained to serve as [t]rustee." Sandoval stressed that but for him honoring his end of the agreement, Madden "would not have been chosen to serve as [t]rustee." As a result, Madden's contacts with Texas as trustee—which include attending meetings, executing the Gan Shares Trust Agreement, and taking possession of and securing personal property, in Texas—all relate to the oral agreement. But for her agreeing to serve as trustee, her obligation to pay would not have arisen. Thus, the crux of Sandoval's claim relates to whether Madden was retained, and compensated for her services, as trustee. Because of this, Madden's contacts relate to the operative facts of Sandoval's litigation. *Luciano*, 625 S.W.3d at 14 (citation omitted).

5. <u>Fair Play and Substantial Justice</u>

Lastly, we must consider whether exercising jurisdiction over Madden would "run afoul of 'traditional notions of fair play and substantial justice.'" *Luciano*, 625 S.W.3d at 18 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991). The nonresident would have to present "a compelling case that the presence of some consideration would render jurisdiction unreasonable," *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 432 (internal quotation marks omitted).

We consider the nonresident's contacts in light of (1) the burden on the nonresident; (2) the interest of Texas in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantial social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Madden's burden to defend this breach of oral agreement claim in Texas is not undue. Additionally, the Supreme Court has recognized states' strong interest in providing effective means of redress for their residents' breach of contract claims. *Moncrief Oil Intern. Inc.*, 414 S.W.3d at 152 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Texas is also the most logical forum for litigation because it is where the witnesses related to Madden's appointment and compensation as trustee reside. And our judicial system's interest in obtaining "the most effective resolution of controversies" supports the exercise of jurisdiction in Texas. *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

Consequently, we overrule Madden's sole issue on appeal.

## CONCLUSION

The trial court's order denying Madden's special appearance is affirmed.

Velia J. Meza, Justice