

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00665-CV

Alison **MAYNARD** and Richard Carlisle,
Appellants

v.

William R. **LUCERO** and Jacob Vos,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-11772
Honorable Tina Torres, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Adrian A. Spears II, Justice
                H. Todd McCray, Justice

Delivered and Filed: April 2, 2025

AFFIRMED

Allison Maynard and Richard Carlisle appeal from a final judgment granting special appearances and dismissing their claims against nonresident defendants William R. Lucero and Jacob Vos. Because we conclude the trial court had no personal jurisdiction over Lucero and Vos, we affirm the trial court's judgment.

**BACKGROUND**

In 2020, Maynard, a then-suspended Colorado lawyer, and Carlisle filed suit against Lucero and Vos in Bexar County, Texas, complaining that their private emails had been hacked and were being used in Colorado State Bar disciplinary proceedings against Maynard. Vos was the attorney for the Colorado Supreme Court's Office of Attorney Regulation Counsel ("OARC") who prosecuted the disciplinary complaint against Maynard. Lucero was the presiding disciplinary judge for the hearing panel that considered the disciplinary complaint against Maynard.

The Colorado disciplinary proceedings against Maynard were prompted by an inquiry from a Wisconsin attorney, Jacob Zimmerman. Zimmerman, who represented a plaintiff in a defamation suit filed in Wisconsin, alleged that Maynard was providing legal assistance to the defendants in the Wisconsin litigation, even though her Colorado law license was suspended. Vos, in turn, prepared the disciplinary complaint, alleging that Maynard had committed the unauthorized practice of law and violated the orders of a Wisconsin court. At the conclusion of the disciplinary proceedings, the Colorado hearing panel, presided over by Judge Lucero, found that Maynard had assisted unrepresented parties in litigation by drafting pleadings for them, and had undermined the legal system by violating the duty she owed as a professional to obey court orders and the rules governing the practice of law in each jurisdiction. Based on these findings, the Colorado hearing board stripped Maynard of her Colorado law license.

After Maynard's disbarment, Maynard and Carlisle amended their Texas suit to assert claims for the use and disclosure of their emails in the Colorado disciplinary proceedings, which they contended violated federal law. *See* 18 U.S.C. § 2520 ("Recovery of civil damages authorized"); 18 U.S.C. § 2511 ("Interception and disclosure of wire, oral, or electronic communications prohibited"); 18 U.S.C. § 2515 ("Prohibition of use as evidence of intercepted

wire or oral communications"). Specifically, Maynard's and Carlisle's amended pleadings alleged that: (1) Vos, in his capacity as a prosecutor with the Colorado OARC, pursued disciplinary action against Maynard based on information provided by Zimmerman; (2) Vos included quotations from private emails between Maynard, Richard Carlisle, and Wolfgang Halbig in the disciplinary complaint and motions filed in the Colorado disciplinary proceedings and "put them into evidence" at a hearing; (3) the emails were illegally intercepted; (4) Vos obtained the emails from a Texas attorney, Mark Bankston; (5) Bankston claimed to have obtained the emails through discovery in a separate suit filed in Austin, Texas; (6) Zimmerman's client or his agent obtained the emails by hacking Maynard's, Carlisle's, or Halbig's email accounts; (7) Maynard warned Vos that the emails had been illegally intercepted but Vos nevertheless used the emails in evidence in the Colorado disciplinary proceedings; (8) the emails were included in the record the OARC submitted in the Colorado disciplinary proceedings against Maynard; (9) during the disciplinary proceedings, Judge Lucero was provided with "unequivocal evidence" that the emails were "hacked," but he still denied Maynard's request for a protective order; (10) Judge Lucero punished Maynard for the content of the unlawfully intercepted emails; and (11) Judge Lucero published the panel's disciplinary decision on his official website.[1]

In response to the suit, Lucero and Vos each filed a special appearance, stating they lacked the minimum contacts necessary for a Texas court to assume personal jurisdiction over them. *See* TEX. R. CIV. P. 120a. In support of their special appearances, Lucero and Vos submitted declarations, stating they had never been a Texas citizen, they had never had a residence in Texas, they did not have an office or a place of business in Texas, they did not travel to Texas for any matter relating to Maynard or Carlisle or their claims, they did not own any real estate or personal

---

[1]Maynard and Carlisle named other defendants in their suit, including Zimmerman and Bankston.

property in Texas, they did not solicit business or advertise in Texas, they never traveled to Texas to seek business or clients there, they did not initiate litigation in Texas, they had nothing to do with service of process on Maynard in Texas, and they did not post anything on the Internet about Maynard in Texas or elsewhere. Maynard filed a response to the special appearances, but she attached no evidence to her response. Carlisle joined Maynard's response, but he did not attach any evidence.

After a hearing, the trial court signed a final judgment granting Lucero's and Vos's special appearances, dismissing Maynard's and Carlisle's claims against Lucero and Vos, and severing the claims against the remaining defendants into separate cause numbers.[2] Maynard and Carlisle appealed.

**COMPLAINT ABOUT DECLARATIONS**

As a preliminary matter, we address Maynard's and Carlisle's complaint that Lucero's and Vos's declarations are a nullity because they do not comply with section 132.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 132.001(a) (providing "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit"). In both declarations, the jurat is placed at the beginning of the document and is followed by factual statements relating to the special appearances. Both jurats state: "I declare under penalty of perjury that the *foregoing* is true and correct." (Emphasis added). Maynard and Carlisle argue the declarations are "materially defective" based on the jurats' placement at the beginning of the declarations, noting that "foregoing" refers to the statements preceding it and not the statements following it.

---

[2]The appellate record does not include the reporter's record from this hearing.

Generally, to preserve a complaint for appellate review, a party must make a timely objection below and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a). "A defect in the form of [a declaration] . . . must be objected to in the trial court." *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.). "The failure to obtain a ruling from the trial court on an objection to the form of [a declaration] waives the objection." *Id*. Because their complaint about the jurats is a complaint about a defect in form, Maynard and Carlisle were required to object below and obtain a ruling on their objections from the trial court to preserve their complaint for appellate review. *See ACI Design Build Contractors Inc. v. Loadholt*, 605 S.W.3d 515, 517-18 (Tex. App.—Austin 2020, pet. denied) (holding complaint that declaration's jurat was placed "at the beginning" of the document rather than "at the end of the document" was waived when no objection was made in trial court); *see also Mansions in the Forest, L.P. v. Montgomery Cty.*, 365 S.W.3d 314, 317 (Tex. 2012) (holding failure to object to affidavit's lack of a jurat in trial court waived appellant's complaint on appeal).

The record shows that Maynard and Carlisle failed to timely object to the declarations and obtain rulings on their objections from the trial court. After the trial court granted the special appearances, Maynard and Carlisle filed a motion for sanctions, which contained their objections about the placement of the jurats in the declarations. The record does not show that the trial court ruled on these objections. Additionally, in their briefing, Maynard and Carlisle acknowledge that they did not obtain rulings on their objections from the trial court. Because Maynard and Carlisle did not timely object to the declarations and obtain rulings on their objections from the trial court, they have waived this complaint on appeal. *See ACI Design Build Contractors*, 605 S.W.3d at 518; *Stone*, 334 S.W.3d at 374; TEX. R. APP. P. 33.1(a).

However, even if Maynard and Carlisle had properly preserved this complaint for appellate review, we would overrule it. The declarations in this case substantially comply with the statute. Section 132.001 requires an unsworn declaration to be in writing and subscribed by the person making it as true under penalty of perjury. TEX. CIV. PRAC. & REM. CODE § 132.001(c). The key to allowing an unsworn declaration to replace an affidavit is the inclusion of the phrase "under penalty of perjury." *In re Cook Compression LLC,* No. 04-20-00517-CV, 2020 WL 6928397, at *3 (Tex. App.—San Antonio Nov. 25, 2020, orig. proceeding) (concluding declaration substantially complied with section 132.001 when made under penalty of perjury); *Bonney v. U.S. Bank Nat'l Ass'n*, No. 05-15-01057-CV, 2016 WL 3902607, at *3 (Tex. App.—Dallas July 14, 2016, no pet.) (holding section 132.001's main requirements are the declaration be in writing and be subscribed by declarant as true under penalty of perjury). Thus, the placement of the jurats at the beginning of Lucero's and Vos's declarations do not affect their validity. *See In re Cook Compression*, 2020 WL 6928397, at *3; *Bonney*, 2016 WL 3902607, at *3.

## PERSONAL JURISDICTION

On appeal, Maynard and Carlisle argue the trial court erred in granting the special appearances because (1) Lucero and Vos failed to negate personal jurisdiction, (2) minimum contacts were established by violations of the above-cited federal wiretap laws "along with" Texas's long-arm statute, (3) the minimum contacts tests for both specific and general jurisdiction were satisfied, and (4) the exercise of jurisdiction did not offend traditional notions of fair play and substantial justice. Because it is dispositive, we focus on whether or not Lucero and Vos had the requisite minimum contacts with Texas to comport with constitutional due process.

**Standard of Review**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, which we review under a de novo standard. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002*).* In deciding the jurisdictional issue, the trial court frequently must resolve questions of fact. *Id*. When, as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, the reviewing court implies all relevant facts necessary to support the judgment that are supported by the evidence. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc*., 512 S.W.3d 878, 885 (Tex. 2017); *BMC Software*, 83 S.W.3d at 795.

**Special Appearance Procedures**

The plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff sufficiently pleads these jurisdictional allegations, the burden then shifts to the defendant to negate all the alleged bases of personal jurisdiction. *Id*. "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Id*. at 658–59. "The defendant can negate jurisdiction on either a factual or legal basis." *Id*. at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with

Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.

**Applicable Law**

"Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees." *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024). The Texas long-arm statute permits a trial court to exercise personal jurisdiction over a defendant who "does business in this state," which is defined to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 17.042(2)). "However, [even] allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). "[B]ecause Texas's long-arm statute extends personal jurisdiction as far as the federal constitutional requirements allow, the 'federal due process requirements shape the contours of Texas courts' jurisdictional reach.'" *Goldstein*, 690 S.W.3d at 294 (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)).

A state's exercise of personal jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *M & F Worldwide Corp.*, 512 S.W.3d at 885. A nonresident defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991).

Specific jurisdiction exists when (1) the defendant has made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities in the state and (2) the defendant's potential liability arose from or is related to those contacts. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022). To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum state. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). Only the defendant's contacts are relevant, not the unilateral activity of another party or a third person. *Id*. Plus, the defendant's contacts "must be purposeful rather than random, fortuitous, or attenuated." *In re Christianson Air Conditioning*, 639 S.W.3d at 679. A "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant." *Michiana*, 168 S.W.3d at 790.

General jurisdiction exists when a defendant's contacts with the forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software Belgium*, 83 S.W.3d at 795–96; *Guardian Royal,* 815 S.W.2d at 228. "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal,* 815 S.W.2d at 228. General jurisdiction requires that a defendant be "essentially at home" in the forum state. *In re Christianson Air Conditioning*, 639 S.W.3d at 679.

**Analysis**

Here, it is undisputed that the disciplinary proceedings against Maynard took place entirely in Colorado. Maynard and Carlisle nevertheless argue that the trial court had specific jurisdiction over Lucero and Vos because they directed intentional torts—the unlawful use and disclosure of

the emails—at a Texas resident. We disagree. The Texas Supreme Court has "explicitly rejected an approach to specific jurisdiction that turns upon where a defendant 'directed a tort' rather than on the defendant's contacts." *Old Republic*, 549 S.W.3d at 565; *see Kelly*, 301 S.W.3d at 661 ("[W]e rejected the concept of directed-a-tort jurisdiction in *Michiana*,[3] instead affirming the importance of the defendant's contacts with the forum state."); *Geo-Chevron Ortiz Ranch #2 v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at *3 (Tex. App.—San Antonio Mar. 7, 2007, pet. denied) ("The Texas Supreme Court has expressly rejected jurisdiction based solely upon where the tort was 'directed.'").

Maynard and Carlisle further argue that Lucero and Vos established minimum contacts with Texas because Maynard was served with the disciplinary complaint at her home in San Antonio, Texas. However, the jurisdictional evidence showed otherwise. Both Lucero and Vos stated in their declarations that they had "nothing to do with the service of process on Maynard or the service of anything on Plaintiff Maynard in Texas." Lucero's and Vos's declarations were uncontroverted. Thus, the record conclusively established that Lucero and Vos were not involved in serving Maynard with process in Texas. Furthermore, the fact that Maynard lived in Texas while the disciplinary proceedings were taking place in Colorado does not show that Lucero and Vos had minimum contacts with Texas. *See Searcy*, 496 S.W.3d at 76 "[T]the proper focus is on the quality of the defendant's contacts with the forum, as opposed to the residence of the plaintiff.").[4]

The only other Texas activity mentioned in Maynard's and Carlisle's pleadings involved Vos's receipt of the emails, which were allegedly obtained in two ways. First, Maynard's and

---

[3]*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788-92 (Tex. 2005).

[4]Similarly, to the extent Maynard and Carlisle suggest the trial court had personal jurisdiction over Lucero based on their allegation that Lucero posted the disciplinary decision on his official website, Lucero stated in his declaration that he "personally did not post anything on the [I]nternet about [Maynard] in Texas or elsewhere." Thus, the record conclusively established that Lucero was not involved in posting anything about Maynard on the Internet.

Carlisle's pleadings alleged Vos received the emails from a Texas attorney, Bankston, who said the emails were produced in discovery in a lawsuit involving different parties in Austin, Texas. Second, Maynard's and Carlisle's pleadings alleged Zimmerman's client, or his client's agent, obtained the emails by hacking Maynard's, Carlisle's, or Halbig's email accounts. These allegations, which involve the unilateral activities of third parties, were insufficient to establish that Vos purposefully availed himself of the benefits and protections of Texas law. *See Guardian Royal*, 815 S.W.2d at 227-28 (noting that to qualify as a minimum contact, "the contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others."); *see also Michiana*, 168 S.W.3d at 790 (noting the "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant."); *Guardian Royal,* 815 S.W.2d at 228 (recognizing when specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation). Any contact Vos may have had with Texas in receiving the emails was not purposeful, but random, fortuitous, or attenuated. *See In re Christianson Air Conditioning*, 639 S.W.3d at 679 (stating the defendant's contacts with the forum state "must be purposeful rather than random, fortuitous, or attenuated" to satisfy Due Process Clause of the U.S. Constitution).

Because Lucero and Vos did not engage in any activities demonstrating they purposefully availed themselves of the benefits and protections of Texas law, we conclude the trial court did not have specific jurisdiction over them. *See Goldstein*, 690 S.W.3d at 294 (recognizing that to establish minimum contacts, the defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws).

Maynard and Carlisle also argue the trial court had general jurisdiction over Lucero and Vos. "General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex. 1996) (citing *Guardian Royal,* 815 S.W.2d at 228). A court has general jurisdiction over a nonresident defendant whose affiliations with the state are so continuous and systematic as to render him essentially at home in the forum state. *Old Republic*, 549 S.W.3d at 565. For an individual defendant, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Marsenison v. Ross*, No. 04-22-00098-CV, 2023 WL 5280360, at *2 (Tex. App.—San Antonio Aug. 16, 2023, pet. denied) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

Here, the activities that Maynard and Carlisle rely on to support general jurisdiction occurred in Colorado, not Texas. Specifically, Maynard and Carlisle argue general jurisdiction existed because Lucero and Vos engaged in a "campaign against a resident of Texas" and "conduct[ed] quasi-judicial proceedings against Maynard in Colorado for over a year," adding that the "[t]he pleadings file transmitted to the Colorado Supreme Court contains 1,264 pages." In sum, Maynard and Carlisle did not allege or show that Lucero and Vos had the "continuous and systematic" contacts with Texas required to confer general jurisdiction.

Additionally, the uncontroverted evidence supports an implied finding that Lucero and Vos were not domiciled in Texas. *See Boyd v. Davidovich*, No. 05-23-00457-CV, 2024 WL 4457021, at *3 (Tex. App.—Dallas Oct. 10, 2024, no pet.) ("To establish Texas as a domicile, a person must live in Texas intending to make it his or her fixed and permanent home."). In their declarations, Lucero and Vos stated that: (1) they were citizens of the State of Colorado, (2) they had never been a citizen of the State of Texas, (3) they did not have a residence in Texas, and (4) they had never

had a residence in Texas. Thus, their domicile cannot serve as a basis for general jurisdiction. *See Marsenison*, 2023 WL 5280360, at *4 ("There is no dispute Marsenison is domiciled in Florida and not in Texas. His domicile therefore cannot serve as the basis for general personal jurisdiction.").

Because Maynard and Carlisle failed to meet the demanding minimum contacts standard for general jurisdiction, we conclude the trial court did not have general jurisdiction over Lucero and Vos.

## CONCLUSION

We hold Lucero's and Vos's contacts with Texas were insufficient to confer either specific or general jurisdiction over them in this case. Accordingly, the exercise of personal jurisdiction over Lucero and Vos did not comport with constitutional due process guarantees. The trial court's judgment is therefore affirmed.

Adrian A. Spears II, Justice